UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUY ADAM ROOK,

     Petitioner,

  v.

DONALD HOLBROOK,

     Respondent.

Case No. C18-233 JCC-BAT

**REPORT AND
RECOMMENDATION**

   Petitioner Guy Adam Rook seeks 28 U.S.C. § 2254 habeas relief from his conviction and

life sentence for vehicular assault committed in a reckless manner. *State v. Rook*, King County

Superior Court Cause Number 10-1-01028-5. *See* Dkt. 27, Exhibit 1. On March 13, 2018, the

Court appointed the Federal Public Defender (FPD) to represent petitioner in this matter. Dkt. 8.

In the habeas petition, that petitioner initially filed *pro* se, on February 13, 2018, petitioner

asserted nineteen grounds for relief:

    1. The Information/Indictment was improperly amended under the
    4th, 5th, 6th, and 14th Amendments.

    2. Petitioner's sentence violates the 8th Amendment prohibition of
    punishment that is cruel and unusual.

    3. The state court denied Petitioner due process (equal protection)
    when it left unresolved claims under the Washington State
    Constitution, that petitioner's sentence is/was cruel and unusual
    punishment, and an 8th and 14th Amendment violation.

REPORT AND RECOMMENDATION- 1

4. The unwarranted use of a stun belt through-out petitioner's jury trial violated his rights to due process under the 14th amendment.

5. The state failed to prove beyond a reasonable doubt that petitioner was the proximate cause of the traffic accident in violation of the 5th, 6th, and 14th amendments.

6. Defense counsel was ineffective because he refused/failed to raise conduct of another in violation of the 5th, 6th, and 14th Amendments.

7. Defense counsel was ineffective when he refused and/or failed to object when the prosecutor interfered with and intimidated a defense witness from testifying in violation of the 5th Amendment.

8. Defense counsel was ineffective when he refused to investigate Mr. Kalaluhi's medical diagnosis, and when he failed to investigate Ms. Rectenwald' s intoxication in violation of the 6th Amendment.

9. Defense counsel was ineffective when he failed to impeach Sgt. Flynn, Officer Conner, and Officer Adams in violation of the 6th Amendment.

10. Defense counsel was ineffective when he failed to call subpoenaed defense witnesses in violation of the 6th Amendment.

11. The state committed misconduct when it interfered and excluded a defense witness testifying at petitioner's trial in violation of the 5th and 6th Amendments.

12. The state failed to turn over discovery materials requested during pretrial and trial proceedings in violation of the 5th and 14th Amendments.

13. The trial court violated petitioner's 5th, 6th, and 14th Amendment rights when it allowed prejudicial expert testimony by a witness that was not qualified as an expert

14. The trial court violated petitioner's 5th, 6th, and 14th Amendment rights when it refused to order a new CrR 3.5 hearing.

15. The trial court violated petitioner's 14th Amendment rights when it allowed court reporter Michael P. Townsend to file verbatim report of proceedings that were not certified.

REPORT AND RECOMMENDATION- 2

16. The state policy agency denied petitioner his 4th, 5th, 8th, and 14th Amendment rights when it failed to conduct a proper investigation of the crimes petitioner was charged with.

17. Appellate counsel was ineffective when she failed to raise or argue any issues on direct appeal related to pretrial and trial proceedings in violation of the 5th, 6th, and 14th Amendments.

18. Appellate counsel was ineffective when she failed to obtain a certified copy of the verbatim report of proceedings in violation of the 5th, 6th, and 14th Amendments.

19. The cumulative errors in petitioner's case resulted in the violation of petitioner's 4th, 5th, 6th, 8th, and 14th Amendment rights.

*See* Dkt. 27, Ex. 2, *State v. Rook*, Court of Appeals No. 6752-9-I.

After substantial delay, the FPD filed on September 23, 2019, a "Counseled Reply in Support of Habeas Petition." Dkt. 41. The Counseled Reply states counsel "waives none of Mr. Rook's claims for habeas relief, but focuses on one federal constitutional claim . . . that his mandatory life-without-parole (LWOP) sentence for a third-strike driving offense with a mens rea of only recklessness . . . is grossly disproportionate in violation of the Eighth Amendment." *Id.* at 1. Hence the only issue counsel brief is the Eighth Amendment claim. Attached to counsel's Reply are exhibits that are not part of the record before the state court and which are presented for the first time in this habeas action. As discussed below, the Court may not consider the facts asserted in these exhibits. Counsel presents no argument as to the 18 other grounds for relief petitioner raised in the original habeas petition and does not request an evidentiary hearing. *Id*. at 1-2. Instead counsel asks the Court to consider the reasons petitioner presents in his petition and a *pro se* "Supplemental Brief" that petitioner filed on September 23, 2019. *Id.*

Because petitioner is represented by counsel and cannot appear or act on his own behalf under Local Rule 83.2(b)(5), he moved the Court for permission to file a *pro se* supplemental

REPORT AND RECOMMENDATION- 3

brief, and a declaration in support. Dkts. 42, 43. Respondent objects to petitioner's motion to file a pro se brief and is correct a Court should normally deny petitioner's motion. Dkt. 44. By separate order, the Court has denied the motion to file a pro se brief. However, because Counsel submitted a Reply that does not waive the 18 other claims petitioner originally asserted, Counsel has essentially incorporated petitioner's arguments by reference, and the Court will consider each of the claims. The Court however declines to consider petitioner's declaration in support, Dkt. 43, in that it is an impermissible attempt to supplement the state court record and is barred as discussed more fully below.

Respondent does not argue the 19 grounds for relief originally raised in the habeas petition are unexhausted or untimely. The claims are thus properly before the Court, and the Court need not recite the procedural history regarding the state court direct appeal or personal restraint petition proceedings. After careful consideration, the Court recommends the habeas petition be denied. The state court adjudicated the merits of all claims presented and the petition should be dismissed because petitioner has failed to demonstrate that the state-court adjudication of his grounds for relief was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)(2). The Court also recommends **DENYING** an evidentiary hearing, further supplementation of the record, and issuance of a certificate of appealability (COA).

## BACKGROUND

The Washington Court of Appeals summarized the facts regarding petitioner's case as follows:

> On August 25, 2009, at approximately 11:40 p.m., Sergeant Dan Flynn was in his patrol car driving on South 154th Street at the north end of SeaTac Airport. As Flynn drove around a blind corner, he saw a car approaching him from the opposite direction that was traveling at a very high speed and was partially over

REPORT AND RECOMMENDATION- 4

the center line. The posted speed limit was 35 mph but Flynn estimated the car's speed at 70 mph. Flynn anticipated a collision and pulled off the road immediately and braced for impact. The car then sped past Flynn and continued around the corner. Flynn activated his emergency lights and began a pursuit of the speeding car. He pursued the car as it accelerated eastbound toward the traffic light at South 154th Street and 24th Avenue South.

At the time, Christopher Kalaluhi was waiting at the traffic light at that intersection, heading south on 24th Avenue South. When the light turned green, Kalaluhi drove through the intersection and the speeding car crashed into Kalaluhi's car on the passenger side of the car. Kalaluhi's car spun through the intersection and crashed into a power pole.

Kalaluhi's coworker, Lori Partridge, was in the car behind Kalaluhi's car at the intersection and went to help Kalaluhi after the collision. As she approached the scene, she saw a man later identified as Guy Rook emerge from the driver's side of the speeding car. Rook appeared to Partridge as if he was going to fall over, then stumbled across the street and went into some bushes. Just as Partridge began to call 911, Sergeant Flynn arrived. Partridge then approached Kalaluhi's car, which she described as "flat as a pancake" and saw that Kalaluhi's face was bleeding and that he looked frightened. Flynn described Kalaluhi as "basically wrapped in metal," and "bleeding severely from [his] face."

Flynn called for aid and then went to check on the passenger in Rook's car, identified as Tracy Rectenwald. [Court's footnote omitted.] Rectenwald did not have any visible injuries except for a mark from the seatbelt and told Flynn that she was okay. Flynn then saw Rook return to the scene. Flynn handcuffed Rook and had another officer place him in a patrol car. Shortly after, Deputy Andy Conner contacted Rook and noted that he had bloodshot eyes, slurred speech, and an odor of alcohol on his breath. Conner advised Rook of his rights and asked him how much he had to drink. Rook replied, "Too much; I'm drunk." Rook also told Conner that his arm was injured and Conner took him to the hospital.

At the hospital, a physician's assistant examined Rook and noted that Rook smelled of alcohol and appeared intoxicated. Deputy Conner then read Rook the implied consent warnings for a blood test and asked Rook if he would provide a blood sample. Rook responded, "Fuck that, I'm going to prison, anyway, so I ain't going to help you." Rook was belligerent and verbally abusive to Conner and the hospital staff and eventually insisted on leaving the hospital against medical advice.

Kalaluhi had to be cut out of his car before he would be transported to the hospital. He was initially transported to Highline Medical Center but was then transferred to Harborview Medical Center due to the severity of his injuries. Kalaluhi had suffered a lacerated spleen, a fractured vertebra, and extensive cuts on his face and head. The physician who treated him at Harborview determined

that Kalaluhi's splenic laceration was a life threatening injury because of the risk of it breaking open and causing acute internal bleeding. Kalaluhi's spleen eventually healed without surgical intervention. Kalaluhi also suffered nerve damage that continues to affect the functioning of his right arm and he is still in pain on a daily basis.

The State charged Rook with one count of vehicular assault alleged to have been committed by the alternate means of driving under the influence (DUI) and in a reckless manner and one count of felony hit and run. Rook was facing a life sentence under the Persistent Offender Accountability Act (POAA) if convicted of vehicular assault, which would have been his third serious offense. Rook discharged three court appointed attorneys and, after an unsuccessful motion to discharge a fourth, he decided to proceed pro se and waived his right to counsel. [Court's footnote omitted.]

Throughout the protracted pretrial proceedings, Rook was belligerent and verbally abusive to the court and counsel. At one point when the court advised Rook that it was not prepared to address his discovery motions, Rook exclaimed, "Thanks for fucking me again! Piece of --." Rook repeatedly became agitated as the court requested that he show some self-control.

Counsel for the King County Jail then brought a motion for the court to order Rook to wear a "Band-It," a fabric placed under the clothes that delivers an electric shock when activated by a hand held control by a corrections officer. The motion was based on Rook's volatile behavior, his jail infractions, and the fact that he was facing a life sentence. The court held a hearing in which the jail cited several infractions he committed which demonstrated "a lack of deference to authority and frequent and repeated displays of rage and lack of control, not to mention threats and assaults." Rook also testified, denying the infractions and claiming that he would not "act a fool" in the courtroom.

When the trial court asked Rook if he had any alternative suggestions other than wearing the Band-It, Rook noted there were "armed guards in here that are told to kill you if you try to do anything stupid." The trial court then asked for suggestions "[o]ther than having a guard kill you." Rook replied, "I guess the best thing, if you decide that I'm going to be a fool, would be that leg band thing that the jury can't see."

The court confirmed with jail counsel and the jail captain that the Band-It would be placed on Rook's calf under his clothing and would not be visible to the jury, that the officer who had the control device would be seated unobtrusively in another part of the courtroom, and that it would not be activated unless there was an attempted escape or attempted assault. The court also expressed concerns about the ability to maintain security without the Band-It in light of the physical layout of the courtroom. Rook then agreed to wear the Band-It through the following exchange with the court:

THE COURT: Okay. So I guess my initial point is, I haven't made any ruling as to whether I will require it or not, but I do know that the security – the way it looks is going to be much different if you choose to have [the Band-It] or if I order it, even over your objection. MR. ROOK: Go ahead and order it, I've got no problem.

THE COURT: Okay. All right.

MS. BALIN: [counsel for the jail]: Very well, your Honor.

THE COURT: So we'll do that.
The Court granted the jail's motion for Rook to wear the Band-It.

At trial, Rook testified and claimed that he had not been drinking on the night of the accident but that his passenger, Rectenwald, was drinking heavily. According to Rook, they were arguing in the car while he was driving and Rectenwald dumped her drink in his lap as they were rounding the corner past Flynn's police car, which caused him to swerve into the oncoming lane. He further claimed that he crashed into Kalaluhi's' car because Rectenwald had hit him in the head and knocked off his glasses. Rook also claimed he left the scene because he was going for help. He denied that he told Deputy Conner than he had too much to drink and that he was asked to take a blood test at the hospital.

The jury found Rook guilty of vehicular assault but acquitted him of felony hit and run. The jury also made a finding that Rook was guilty of vehicular assault under the reckless manner alternative means, but not the DUI alternative means. At sentencing, the trial court found that Rook's criminal history included a conviction for first degree robbery and a conviction for first degree rape of a child, both of which carried a statutory maximum penalty of life in prison and qualified as serious offenses under the POAA. Accordingly, because vehicular assault counted as a third serious offense, the court sentenced Rook to life in prison without the possibility of parole as required by the statute.

Exhibit 2, Opinion, *State v. Rook*, Court of Appeals Cause No. 67572-9-I, at 1-6.

## EVIDENTIARY HEARING

Petitioner and counsel contend the Court should order an evidentiary hearing because he "has developed all the facts of his case for review," his case "presents many disputes," and the Court shall therefore hold a hearing to give "all parties adequate time to argue outstanding issues." Dkt. 42 at 2. Petitioner's argument fails. An evidentiary hearing is precluded by *Cullen*

REPORT AND RECOMMENDATION- 7

1    *v. Pinholster*, 563 U.S. 170 (2011). As discussed below, petitioner's claims were adjudicated on

2    the merits by the state courts, and the state courts' rejection of the claims are neither contrary to

3    or an unreasonable application of clearly established Supreme Court law or based upon an

4    unreasonable determination of the facts given the record. Under these circumstances, this court is

5    barred from conducting an evidentiary hearing to further develop the facts on petitioner's claims.

6    *Pinholster* at 185 ("If a claim has been adjudicated on the merits by a state court, a federal

7    habeas petitioner must overcome the limitations of § 2254(d)(1) on the record that was before the

8    state court.")[1]; s*ee also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the

9    Supreme Court has declined to decide whether a district court may ever choose to hold an

10   evidentiary hearing before it determines that § 2254(d) has been satisfied . . . an evidentiary

11   hearing is pointless once the district court has determined that § 2254(d) precludes habeas

12   relief.") (internal quotation marks and citation omitted).

13           To the extent petitioner attempts to further develop or supplement the record through

14   counsel's and petitioner's attachments and exhibits to their respective reply briefs, the attempt is

15   also barred under *Pinholster* because *Pinholster* is applicable to motions seeking additional

16   discovery. *See Runningeagle v. Ryan*, 686 F.3d 758, 773–774 (9th Cir. 2012) (*Pinholster*

17   governs discovery, expansion of the record and evidentiary hearings); *Neng Saypao Pha v.*

18   *Swarthout*, No. 2:13-CV-1133 MCE GGH, 2015 WL 1787569, at *6 (E.D. Cal. Apr. 20, 2015),

19   *subsequently aff'd sub nom. Neng Saypropha v. Gary Swarthout*, *Warden*, No. 15-16028, 2016

---

[1] The *Pinholster* limitation also applies to claims brought under § 2254(d)(2). *See Gulbrandson v. Ryan*, 738 F.3d 976, 993, n. 6 (9th Cir. 2013) ("*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well. *See* § 2254(d)(2) (allowing for habeas relief if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.") (emphasis added); *Pinholster*, 131 S.Ct. at 1400 n. 7 (comparing (d)(1) to (d)(2) and stating that (d)(1) "also is plainly limited to the state-court record.") (emphasis added)).

WL 4073503 (9th Cir. Aug. 1, 2016) ("*Pinholster* applies to all requests for evidentiary hearing (and discovery) no matter the subject of the claim; it worked a sea change in federal habeas corpus practice."); *Virgo v. Frauenheim*, 2018 WL 3831003 at * 12 (E.D. Cal., August 13, 2018) (The article petitioner attached to federal habeas pleading is precluded by *Pinholster's* bar to supplementing facts adduced for the first time in federal proceedings where claim is adjudicated on the merits.). Accordingly, the Court may not consider the exhibits, declarations and attachments that counsel and petitioner submitted in support of relief. Dkts. 41, 43.

In sum, in determining whether relief is available under 28 U.S.C. § 2254(d)(1) or (2), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Here, the Court concludes petitioner is not entitled to relief and that the habeas claims may be resolved by review of the existing record without further discovery or supplementation of evidence presented for the first time; accordingly no evidentiary hearing is required because petitioner's allegations do not entitle him to habeas relief. The Court concludes petitioner's request for evidentiary hearing, discovery, and to supplement the state court record should be denied. *See also Kemp v. Ryan*, 638 F.3d 1245, 1269 (9th Cir. 2011) (When a habeas petitioner is not entitled to an evidentiary hearing, then the petitioner's request for discovery is futile, and the court does not abuse its discretion in denying it.).

## HABEAS REVIEW STANDARD

A federal Court may not grant habeas relief unless the state court decision: "(1) was contrary to clearly established federal law as determined by the Supreme Court, (2) involved an

1   unreasonable application of such law, or (3) . . . was based on an unreasonable determination of

2   the facts in light of the record before the state court." *See Fairbank v. Ayers*, 650 F.3d 1243,

3   1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2).

4         A state court's decision is contrary to clearly established federal law if it contradicts the

5   law set forth by the United States Supreme Court or reaches a result different than that reached

6   by the Supreme Court on materially indistinguishable facts. *See Terry Williams v. Taylor*, 529

7   U.S. 362, 405–06 (2000). A state court's decision is an unreasonable application of clearly

8   established federal law when the state court identifies the correct legal rule but applies it to a new

9   set of facts in a way that is objectively unreasonable. *See id*. at 407. "Clearly established federal

10   law means the governing legal principle or principles set forth by the Supreme Court at the time

11   the state court renders its decision." *Xiong v. Felker*, 681 F.3d 1067, 1073 (9th Cir. 2012)

12   (citation omitted). A court's determination of clearly-established law rests on a Supreme Court

13   holding, not on circuit decisions. *See Wright v. VanPatten*, 552 U.S. 120, 125–26 (2008) (A

14   Supreme Court case must have "squarely address[ed]" a certain issue and given a "clear answer"

15   regarding the applicable legal rule to create "clearly established federal law.).

16         Turning to habeas relief based upon a claim the state court unreasonably determined the

17   facts, "a federal court may not second-guess a state court's fact-finding process unless, after

18   review of the state-court record, it determines that the state court was not merely wrong, but

19   actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El*

20   *I*, 537 U.S. 322, 340 (2010) ("[A] decision adjudicated on the merits in a state court and based on

21   a factual determination will not be overturned on factual grounds unless objectively unreasonable

22   in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

23         Additionally, state-court factual findings are presumed correct. This is a presumption the

REPORT AND RECOMMENDATION- 10

1  petitioner must overcome by clear and convincing evidence. *Davis v. Ayala*, 135 S. Ct. 2187,

2  2199–2200 (2015) (quotation and citation omitted). Consequently even if reasonable minds

3  reviewing the record might disagree about a state court's factual determination, a federal habeas

4  court cannot supersede the trial court's determination. " *Id.* at 2201.

5  In considering a habeas petition, a federal court reviews the "last reasoned decision" from

6  the state court. Where the final state court decision contains no reasoning, the court looks to the

7  last decision from the state court that provides a reasoned explanation of the issue. *See*

8  *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Where no state court decision

9  articulates its underlying reasoning, "the habeas petitioner's burden still must be met by showing

10 there was no reasonable basis for the state court to deny relief. . . ." *Harrington v. Richter*, 562

11 U.S. 86, 98 (2011). When the state courts fail to provide reasoning for its decisions, a federal

12 court must independently review the record and ascertain whether the state court's decision was

13 objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (citation and

14 internal quotation marks omitted)." "Crucially, this is not a de novo review of the constitutional

15 question. Rather, even a strong case for relief does not mean the state court's contrary conclusion

16 was unreasonable." *Id.* (citations and internal quotation marks omitted).

17 Finally, a federal court's review of a habeas claim is limited to the facts before the state

18 court and the petitioner is not entitled to an evidentiary hearing in federal court. *See Cullen v.*

19 *Pinholster*, 131 S. Ct.1388, 1398 (2011). "An evidentiary hearing may be appropriate after

20 *Pinholster* only if the district court first determines that the state court made an unreasonable

21 application of federal law or made an unreasonable determination of facts based on the record

22 before it." *Grecu v. Evans*, No. 07-0780-EMC, 2014 WL 5395783, at \*17 (N.D. Cal. Oct. 22,

23 2014) (unreported).

## DISCUSSION

**Claim 1**    **The Information/Indictment was improperly amended under the 4th, 5th, 6th, and 14th Amendments.**

Petitioner alleges on June 16, 2010, he appeared before King County Superior Court Judge Roberts on a motion to discharge his third public defender. Dkt. 16, Ex. 1 at 31. Petitioner contends deputy prosecutor Freedheim told Judge Roberts she would "be amending/adding charges" if petitioner fired his attorney *Id.* Petitioner claims Judge Robarts ordered the state not to amend the charges but despite the judge's order the state subsequently amended the charges.

The Court rejects petitioner's arguments for two reasons. First, petitioner was originally charged by information with vehicular assault under the DUI alternative means. In February 2011, the state amended the information to include an alternative means of committing vehicular assault: driving in a reckless manner. Dkt. 27, ex. 26. The amendment thus did not involve a new charge and did not increase the seriousness of the penalties petitioner faced. Vehicular assault is a "most serious offense," whether charged under the DUI means or reckless driving means. Under either means, petitioner faced a life sentence if convicted. See RCW 9.94A.030 (33) and (38). Because petitioner has not shown that charges of increased severity were filed, he has failed to show the state acted in a vindictive manner when it amended the charges. *United States v. Gallegos–Curiel*, 681 F.2d 1164, 1168 (9th Cir.1982).

And second, the State Court of Appeals rejected the claim finding it relies upon a misreading of the record. Dkt. 27, ex. 26. The state court found when petitioner appeared before Judge Roberts on June 16, 2010, the deputy prosecutor indicated petitioner would not receive a more favorable plea offer just because a new lawyer was appointed, there was no discussion about amending the charges, and that Judge Roberts did not issue an order barring the state from amending the charges. *Id*.

Petitioner contends the state court erred. He argues the recording of the June 16, 2010, hearing was altered, and that trial counsel and the Superior Court Judges involved in this case colluded to cover-up the alteration. Dkt. 16, Ex. 1 at 38-45. The state court of appeals addressed this claim stating it received a copy of the verbatim report of proceedings held on June 16, 2010, and a copy of the recording of that hearing and that the "recording serves to show there is no merit to Rook's claims" that the transcript of proceedings were altered, or that there ever was a discussion about amending the charges at the hearing on June 16, 2010. Dkt. 27, Ex. 26. The Washington Supreme Court denied review of the state court of appeals' decision finding petitioner presented no evidence to establish the prosecution violated an order issued by Judge Roberts on June 16, 2010, that the charges not be amended. The Court stated petitioner's "argument is frivolous." Dkt. 27, Ex. 28.

The burden to disprove the factual findings made by the state court rests with petitioner. *See* 28 U.S.C. § 2254(e)(1) (requiring "clear and convincing evidence" to rebut "a determination of a factual issue made by a State court"). Petitioner, however, fails to present clear and convincing evidence that establishes the record was altered. Rather the exhibits he attached indicate the state court did not err in its factual determinations. *See* Dkt. 16, Attachment 1 at 62-68.  Further, the state court reviewed the written transcripts of the proceeding and the recording of the hearing held on June 16, 2010 and concluded they did not support petitioner's claim.

In sum, petitioner has failed to demonstrate the state-court adjudication of his grounds for relief was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented. The state court found Judge Roberts never issued an order barring the state from amending the charges based on a review of the written transcript of the hearing and the recording of the hearing. Similarly, the

state court found no evidence that the deputy prosecuting attorney made threats against petitioner during his motion to discharge defense counsel. Petitioner fails to present evidence to rebut this finding. Further the state was not barred by the constitution from amending the charges because the amended charges were not more severe but simply an alternative means of the original charge. The amendment of the charge was thus not vindictive and the claim should be denied.

**Claim 2        The LWOP sentence violates the 8th Amendment prohibition
of punishment that is cruel and unusual.**

Counsel contend the petitioner's LWOP sentence as a persistent offender violates the Eighth Amendment. Dkt. 41. The Court first addresses counsels' contention the state court did not adjudicate the Eighth Amendment claim on the merits and the Court should therefore review the claim *de novo* rather than under the habeas review standard set forth in § 2254(d). Dkt. 41 at 2.

### a.        The state court adjudicated the Eighth Amendment claim on the merits

Petitioner's counsel argue petitioner's LWOP sentence is "grossly disproportionate" in violation of the Eighth Amendment," *id.* at 1, and the state court did not adjudicate the claim on the merits, *id.* at 2-4, because the state court failed to account for the unique severity of a LWOP sentence, *id.* at 5-7; the Eighth Amendment requires consideration of the mandatory as opposed to discretionary nature of petitioner's sentence, *id.* at 8; the Eighth Amendment is more attentive to issues of *mens rea* than the Washington Constitution, *id.* at 9; the Eighth Amendment is more attentive than the Washington Constitution to unusual punishment, *id.* at 10; and petitioner's sentence is more severe than sentences imposed in other states.

Counsel contend because the claim was not adjudicated on the merits, this Court must review it de novo and should find petitioner's LWOP sentence is grossly disproportionate based on the nature of the crime petitioner committed and also in comparison to other sentences

REPORT AND RECOMMENDATION- 14

1  imposed within and outside Washington State. *Id*. at 12-23.

2      The Court rejects counsel's argument. "By its terms § 2254(d) bars relitigation of any

3  claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1)

4  and (2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Hence under § 2254, federal habeas

5  claims should not be reviewed *de novo*. The state court need not explain its decision or explicitly

6  state it is adjudicating a federal claim for its determination to be deemed to be on the merits. *Id.*

7  Unless a petitioner can show the state court did not adjudicate the federal claim, the Court must

8  presume the state court adjudicated the federal claim on the merits. *Id.* at 98-99.

9      The record shows the state court adjudicated the merits of the Eighth Amendment claim.

10  In the state court, petitioner contended the LWOP sentence he received violates the Eighth

11  Amendment and article I, section 14 of the Washington Constitution's proscription against cruel

12  and unusual punishment. Dkt. 25, State Record, Ex. 2 at 10. The state court of appeals reasoned

13  the state constitution affords more protections than the federal constitution and because the

14  LWOP sentence does not violate the state constitution, the sentence does not violate the federal

15  constitution. *Id.* at 10-11. The state supreme court denied review of the Court of Appeals

16  decision. *Id.* at Ex. 15.

17      Although the state court recognized petitioner asserted a violation of the Eighth

18  Amendment, Counsel contends the state court of appeals did not "directly analyze the Eighth

19  Amendment claim," and erroneously found the state constitution provides more protections than

20  the federal constitution. Dkt. 41 at 2-4. However, there is no requirement the state court

21  explicitly state it is adjudicating a claim on the merits. *Harrington v. Richter*, 562 U.S. at 99.

22  Hence the failure to "directly" analyze the Eighth Amendment does not establish the claim wa

23  not adjudicated on the merits. Further this is not a case in which the state court stated its decision

REPORT AND RECOMMENDATION- 15

rested solely on the state constitution, thereby excluding a merits determination of the Eighth Amendment. Rather the record plainly shows the state court recognized petitioner's claim the LWOP sentence he received violated both the Eighth Amendment and the state constitution. Dkt. 25, Ex. 1 at 10 ("Petitioner next contends that his sentence of life without parole violates the Eighth Amendment's protections . . .").  Thus rather than disregarding the Eighth Amendment claim, the state court ruled the state constitution is more protective than the Eighth Amendment and since petitioner has not shown the state constitution was violated, neither was the federal constitution.

The state court also specifically addressed petitioner's argument the LWOP sentence was "grossly disproportionate" and held:

> Accordingly, he has failed to demonstrate that imposition of a sentence of life without parole for his conviction for vehicular assault, a third serious offense under the POAA, is grossly disproportionate in violation of the state and **federal** constitutions.

*Id.* at 15 (emphasis added). The state court thus clearly stated it found the sentence did not violate the federal constitution. It is clear then, the state court found **neither** the state nor the federal constitution was violated, that the state court recognized and adjudicated the Eighth Amendment claim on the merits, and the claim must be reviewed under the standards set forth under § 2254(d), and no *de novo*.

Counsel disagree and argue at length why the Eighth Amendment is more protective than the state constitution, and that the state court therefore did not adjudicate the merits if the federal protections. But counsels' disagreement does not mean the state court failed to adjudicate the Eighth Amendment claim on the merits; counsel's disagreement certainly does not alter the fact the state court found the LWOP sentence was not grossly disproportionate "in violation of the state and federal constitutions."

1    Rather counsels' disagreement simply means in counsels' view, the state court erred

2    because Counsel believes the Eighth Amendment is more protective than the state constitution,

3    and the state court overlooked these protections.  But a state court's supposed error in analyzing

4    federal constitutional protections does not support the notion that a federal court should review

5    federal habeas claims *de novo*. If this were the case, every federal habeas petitioner would be

6    entitled to *de novo* review because every federal habeas petitioner argues the state courts'

7    decision is erroneous, i.e. the state court failed to correctly address federal protections. Counsels'

8    argument thus turns habeas review on its head. As noted above, § 2254(d) bars relitigation of any

9    claim the state court adjudicates on the merits. The argument the state court erred therefore does

10    not open the door to *de novo* review; rather the federal court's review is constrained by §§

11    2254(d)(1) and (2), in this case because the state court adjudicated the claim on the merits.

12    The Court thus concludes the state court adjudicated the Eighth Amendment claim on the

13    merits and rejects counsels' argument the Court should review the claim *de novo*. In rejecting

14    counsels' arguments, the Court has also considered each of counsels' arguments about why they

15    believe the Eighth Amendment is more protective **in petitioner's** case than the state constitution,

16    i.e. why in counsels' view the state court omitted certain protections afforded by the Eighth

17    Amendment and not covered by the state constitution. Counsel's arguments by and large merge

18    with the arguments counsel later raise in their brief about why relief under a *de novo* review

19    standard should be granted. Dkt. 41 at 12 to 23. But as discussed below, the Court rejects

20    counsels' arguments the Eighth Amendment provides more protections than the state

21    constitution, the Eighth Amendment was violated, and that the state court's decision is thus

22    contrary to or an unreasonable application of clearly established Supreme Court law.

23    **b.    Counsels' arguments that the Eighth Amendment is more protective**

REPORT AND RECOMMENDATION- 17

1    Counsel first claims the Eighth Amendment is more protective because it is more

2    attentive to LWOP sentences than life sentences with the possibility of parole, and that the state

3    court failed recognize this. *Id.*at 5. In support, counsel cites to *Graham v. Florida*, 560 U.S. 48

4    (2010). Dkt. 41 at 6-7. This case does not support relief because the Supreme Court in *Graham*

5    did not hold the Eighth Amendment is more protective as it relates to petitioner, an **adult**, in

6    contrast to *Graham*, a **juvenile** offender.

7    In *Graham* the Supreme Court addressed whether the Constitution permits a **juvenile**

8    **offender** to be sentenced to life in prison without parole for a nonhomicide crime. *Id.* at 52-53.

9    The Supreme Court recognized Eighth Amendment proportionality challenges fall into two

10    categories: first the length of sentence given the circumstances of the case, and second

11    categorical rules such as age. *Id.* at 59-60. The Supreme Court applied the categorical approach

12    to *Graham*, i.e. whether the Eighth Amendment barred imposition of an LWOP sentence in all

13    cases involving juvenile offenders convicted of nonhomicide crimes.

14    In applying the categorical approach, the Court thus considered (1) the national

15    consensus regarding LWOP sentences for juveniles, *id.*at 61; the diminished moral culpability of

16    juveniles, *id*. at 70; how a LWOP sentence is particularly harsh for a juvenile offender and how a

17    "16-year-old and a 75-year-old each sentenced to life without parole receive the same

18    punishment in name only," *id.*; and how penological goals of retribution, deterrence,

19    incapacitation and rehabilitation, are inadequate to justify life without parole for juvenile

20    nonhomicide offenders, *id.* at 75.

21    Counsel's attempt to apply the *Graham* decision to his case thus misses the mark.

22    *Graham* addressed the unique harshness of imposing a LWOP sentence on a **juvenile** in contrast

23    to a LWOP sentence imposed on an **adult** such as petitioner. The Supreme Court found the

REPORT AND RECOMMENDATION- 18

Eighth Amendment categorically barred imposition of a LWOP sentence on juveniles for nonhomicide crime. The decision did not hold the same categorical analysis applied to adults who were sentenced to LWOP, or that the Eighth Amendment concerns applicable to **juvenile offenders** apply to **Adult defendants** at sentencing.

That *Graham* is inapplicable to petitioner, is highlighted by the Supreme Court's subsequent decision in *Miller v. Alabama*, 567 U.S. 460 (2012) which extended *Graham* to homicides committee by juvenile offenders. The Court in *Miller* stated the "sentencing rule permissible for adults may not be so for children," *id*. at 481 and that *Graham* established "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471.

Petitioner, however, was not a juvenile when he committed the vehicular assault herein. In fact, he was an adult when he was convicted of Robbery in the First Degree in 1985, and Rape of a Child in the First Degree in 1994, the two prior predicate felony convictions supporting imposition of the LWOP sentence for his vehicular assault conviction as a persistent offender. Dkt. 25, Ex. 1 (Judgment and Sentence). Hence to the extent counsel attempts to extend the Eighth Amendment protections reserved to **juveniles** in *Graham*, a juvenile, to his **adult**, the attempt fails.

The Court accordingly rejects counsel's argument the Eighth Amendment is more attentive to LWOP sentences than life sentences with the possibility of parole as it relates to petitioner, an adult, and that the state court erred in failing to recognize this. It goes without saying that to the extent counsel is arguing the state court's is contrary to or an unreasonable application of law clearly established by the Supreme Court—*Graham*—the argument fails; as discussed above, the decision in *Graham* and the different degree of attentiveness the Eighth Amendment confers to juvenile sentences is inapplicable to the sentence petitioner received as an

1    adult. The state court's adjudication is thus neither contrary to or an unreasonable application of

2    Supreme Court law.

3            Counsel next argues the state court did not adjudicate the merits of the Eighth

4    Amendment claim because the U.S. Constitution is "more attentive than the Washington

5    Constitution provision to the *mandatory* versus discretionary nature of the sentence imposed."

6    Dkt. 41 at 8. Counsel argues the "Eighth Amendment requires consideration of the mandatory as

7    opposed to discretionary nature of the sentence," unlike the state constitution. *Id.* In support

8    counsel cites to *Miller v. Alabama*, *supra*. But as discussed above *Miller* addressed whether the

9    Eighth Amendment is violated by imposing LWOP on **juvenile**s, who are constitutionally

10   different that **adults** such as petitioner for purposes of sentencing. The holding in *Miller* is thus

11   wholly inapplicable to petitioner's adult LWOP sentence.

12           Counsel also cites to *Woodson v. North Carolina*, 428 U.S. 280 (1976) to support the

13   argument. However, as counsel acknowledges, *Woodson* addressed whether **mandatory death**

14   **penalty statutes** violated the Eighth Amendment. Dkt. 41 at 9. *See also Hamelin v. Michigan*,

15   501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing

16   doctrine' have repeatedly suggested that there is no comparable requirement outside the capital

17   context."). The holding in *Woodson* is thus inapplicable to petitioner's non-capital adult LWOP

18   sentence. As such, to the extent counsel is arguing the state court's decision is contrary to or an

19   unreasonable application of clearly established Supreme Court law—*Miller* and *Woodson*—the

20   argument fails.

21           Counsel further argues the Eighth Amendment is more attentive than the Washington

22   Constitution on issues of *mens rea* and culpability. Dkt. 41 at 9. In support counsel cites to *Tison*

23   *v. Arizona*, 481 U.S. 137, 156 (1987), and *Enmund v. Florida*, 458 U.S. 782 (1987) for the

REPORT AND RECOMMENDATION- 20

1    principle the more purposeful the criminal conduct, the more serious the sanction should be. The

2    argument implies the Eighth Amendment bars imposition of a LWOP sentence for the crime

3    petitioner committed: vehicular assault under the **reckless** means of committing the offense,

4    because recklessness is a lower *mens rea* than that of crimes committed intentionally or

5    knowingly. Neither case supports counsels' argument.

6        *Tison* is a death penalty case in which the Supreme Court noted a "critical facet of the

7    individualized determination of culpability required in capital cases is the mental state with

8    which the defendant commits the crime." *Id.* In *Tison* there was no evidence that Tison "killed or

9    intended to kill." *Id.* at 144. The Supreme Court held however that "major participation in the

10   felony committed, combined with reckless indifference to life, is sufficient," under the Eighth

11   Amendment. *Id.* 158.

12       *Enmund* is also a death penalty case. In this case, *Enmund* sat in a get-away-car parked

13   200 yards from a farmhouse while codefendants went to the farmhouse and robbed and killed

14   two elderly persons living there. *Enmund*, at 784. The Supreme Court stated:

15               For purposes of imposing the death penalty, Enmund's criminal
                 culpability must be limited to his participation in the robbery, and
16               his punishment must be tailored to his personal responsibility and
                 moral guilt. Putting Enmund to death to avenge two killings that he
17               did not commit and had no intention of committing or causing does
                 not measurably contribute to the retributive end of ensuring that
18               the criminal gets his just deserts.

19   *Id.* at 801. The Supreme Court's analysis and holding regarding culpability and *mens rea* in both

20   *Tison* and *Enmund* are thus clearly limited to the Eighth Amendment requirement that

21   individualized determinations are required in **capital sentencing** proceedings; neither holding is

22   applicable to petitioner's **LWOP** sentence and thus does not establish the state court's analysis

23   failed to account for a protection afforded by the Eighth Amendment. As noted above, the

Supreme Court has repeatedly indicated the individualized **capital sentencing** doctrine imposes no such no comparable requirement outside the capital context.

Counsel also argues, under *Solem v. Helm*, 463 U.S. 277 (1983), a crime that was committed negligently or recklessly is less serious than a crime that is committed intentionally and should thus be punished less severely. Dkt. 41 at 10. In *Solem* the Supreme Court addressed a LWOP sentence imposed on Helm for passing a $100 bad check and had convictions for nonviolent felonies only. *Id.* at 280-81. The Court stated:

> In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional.

*Id.* at 290. But *Solem*'s holding does not show the state court overlooked an Eighth Amendment protection regarding *mens rea* as counsel argues. Before *Solem,* the Supreme Court in *Rummel v. Estelle*, *supra*, held a LWOP sentence imposed for fraudulently using a credit card to obtain $80 worth of goods or services did not violate the Eighth Amendment. *Solem* did not overturn *Rummel* decided just three years earlier. After *Solem*, the Supreme Court stated in *Hamelin v. Michigan,* 501 U.S. 957 (1991), "We conclude . . . *Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee," *id.* at 965, and does not prohibit "disproportionate sentences," *id* . at 974; and that under *Solem* a LWOP sentence "violated the Eighth Amendment because it was 'grossly disproportionate' to the crime of recidivism based on seven nonviolent felonies." *Id*. at 997-98 (Kennedy concurring). Hence the Eighth Amendment does not prohibit disproportionate sentences, only "grossly disproportionate" sentences.

REPORT AND RECOMMENDATION- 22

1    In contrast to *Solem*, before committing the vehicular assault in this case, petitioner was

2    convicted of (1) Taking a motor vehicle; (2) Possessing stolen property in the first degree; (3)

3    Burglary in the second degree; (4) Robbery in the first degree; (5) Extortion in the second

4    degree; (6) Rape of a child in the first degree; and (7) Burglary in the second degree. Dkt. 25, Ex.

5    1. Thus, unlike the defendant in *Solem*, who passed bad $100 bad check and had **no** prior

6    convictions for violent offenses, petitioner had two prior convictions for violent felonies and

7    received a LWOP sentence for vehicular assault.

8    *Solem, Rummel,* and *Hamelin*, thus do not support counsel's argument that petitioner's

9    sentence is grossly disproportionate under the Eighth Amendment. Moreover, the Supreme Court

10   in these cases did not hold the *mens rea* of the crimes each defendant committed was critical to

11   the Court's Eighth Amendment analysis as counsel claims. In fact, in each case, the defendant

12   acted knowingly or intentionally. Helm, the defendant in *Solem* passed a bad check; *Rummell*

13   committed credit card fraud and *Hamelin* knowingly possessed 650 grams of cocaine. The *mens*

14   *rea* in each of these cases (intent or knowledge) is more serious, than the reckless *mens rea* in

15   petitioner's vehicular assault. But the Supreme Court did not address whether the Eighth

16   Amendment was limited to imposition of a LWOP sentence for crimes committed with the

17   intentional or knowing *mens rea* attached to such crimes, or that each defendant's sentence was

18   valid or invalid based upon the *mens rea* of the crime committed. The Supreme Court thus did

19   not address or hold in these cases that in LWOP cases, a conviction for a crime with a lesser

20   *mens rea* such as recklessness would violate the Eighth Amendment.

21   Hence none of these cases addressed or held the Eighth Amendment prohibited

22   imposition of a LWOP sentence for a crime committed recklessly as in this case, because

23   recklessness is a *mens rea* that is lower than crimes committed knowingly or intentionally. None

REPORT AND RECOMMENDATION- 23

1   of these cases in fact even turned on the defendant's *mens rea*. The Court thus concludes the

2   state court did not overlook a protection afforded by the Eighth Amendment regarding *mens rea,*

3   and that the state court decision is neither contrary to nor an unreasonable application of clearly

4   established Supreme Court law.

5          Counsel additionally argues the Eighth Amendment is more attentive than the

6   Washington provision to punishments that are particularly unusual. Dkt. 41 at 10. In support

7   counsel citing to *Solem¸ supra,* argues the Supreme Court has "suggested that cruelty and

8   unusualness be judged independently." *Id.* at 11. A suggestion is not a holding; *Solem* never held

9   the Eighth Amendment focuses more on unusual punishment versus cruel punishment; the

10  decision further never held the language of the Eighth Amendment "Excessive bail shall not be

11  required, nor excessive fines imposed, nor cruel **and** unusual punishments inflicted," means

12  "cruel" **or** "unusual" punishment. To the contrary, as noted above, the "Eighth Amendment does

13  not require strict proportionality between crime and sentence, indicating "unusual" sentences do

14  not violate the Eighth Amendment. Rather, the Eighth Amendment forbids only extreme

15  sentences that are "'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. at

16  997-98.

17         The Court thus rejects counsel's contention the state court overlooked a protection

18  afforded by the Eighth Amendment regarding a special focus on unusual punishment.

19  Consequently, the Court rejects counsel's implication the state court decision is contrary to or an

20  unreasonable application of clearly established Supreme Court law.

21         In sum, counsel argues the state court did not adjudicate the merits of the Eighth

22  Amendment claim by incorrectly finding the state constitutional protections subsumed the

23  protections of the federal constitution. Counsel contends the Eighth Amendment includes

REPORT AND RECOMMENDATION- 24

1    additional protections not included in the state constitution. As discussed above, counsels'

2    arguments are unsupported. There is no question the state court adjudicated the merits of the

3    Eighth Amendment in that it concluded the state constitution is more protective than the Eighth

4    Amendment and since the state constitution was not violated, neither was the Eighth

5    Amendment. Moreover, the state court in fact rejected petitioner's argument that his sentence is

6    "grossly disproportionate" to the crime he committed and specifically found the LWOP sentence

7    did not violate the state **and federal constitutions**. Dkt. 25, Ex. at 13. The prohibition on

8    "grossly disproportionate" sentences is the protection the Eighth Amendment affords adult

9    criminal defendants such as petitioner, and as counsel argues in their brief, is the alleged

10   violation that occurred in this case. There is thus no question the state court adjudicated the

11   Eighth Amendment claim on the merits.

12          Although the state court adjudicated the Eighth Amendment claim on the merits, Counsel

13   nonetheless argues at length the state court erred. As discussed above an error in analysis cannot

14   be equated to the failure to adjudicate the claim on the merits. Further, as discussed above, the

15   Court has considered and rejects counsels' arguments the Eighth Amendment confers more

16   protections upon petitioner than the state constitution.

17          The Court therefore concludes the state court adjudicated the Eighth Amendment claim

18   on the merits, denies *de novo* review, and reviews the state court decision under the following

19   required standard: The Court cannot grant federal habeas relief unless the state court decision:

20   "(1) was contrary to clearly established federal law as determined by the Supreme Court, (2)

21   involved an unreasonable application of such law, or (3) . . . was based on an unreasonable

22   determination of the facts in light of the record before the state court." *See Fairbank v. Ayers*,

23   650 F.3d 1243, 1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2). Because the state

REPORT AND RECOMMENDATION- 25

1  court adjudicated the claim on the merits, the Court declines to consider the exhibits and

2  declarations submitted by counsel and petitioner as new evidence presented for the first time on

3  habeas review. As noted above, the Court may not consider these materials under *Pinholster*.

4  **c. The state court's decision is not contrary to or an unreasonable application of**
   **clearly established Supreme Court law**

5  Counsel present no argument that the state court decision upholding petitioner's LWOP

6  sentence is contrary to or an unreasonable determination of clearly established Supreme Court

7  law. Rather as noted above, counsel argues the Court should review the Eighth Amendment

8  claim *de novo* and argues the Court should find under this standard of review that the LWOP

9  sentence imposed herein is "grossly disproportionate" to the crime petitioner committed. Dkt. 41

10  at 12-23. Counsel seeks *de novo* review because the state court decision is not contrary to or an

11  unreasonable determination of clearly established Supreme Court law. The phrase "clearly

12  established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] [Supreme]

13  Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 390, 412 (2000).

14  However, as discussed above, the Court declines to review the claim *de novo* because the

15  claim was adjudicated on the merits. The Court also rejects counsels' and petitioner's attempts to

16  supplement the record with materials not before the state court and not part of the state court

17  record under *Pinholster, supra.*

18  Turning to the arguments presented, in the habeas petition, and Counsels' Reply Brief,

19  petitioner contends the LWOP sentence is grossly disproportionate to the crime for which he was

20  convicted, that the crime for which he was convicted is not serious or violent, and that his

21  sentence is more severe that the sentences imposed in the "California 'three strikes'" cases, *See*

22  Dkt. 16, Appendix A at 45-54 (habeas petition) and Dkt. 41. However, as petitioner

23  acknowledges, the Supreme Court has upheld the validity of California's Three Strikes law

REPORT AND RECOMMENDATION- 26

against Eighth Amendment challenges. *See Ewing v. California*, 538 U.S. 11, (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003). Petitioner attempts to distinguish his case by arguing he received a life sentence without the possibility of parole, whereas the California petitioners received 25 years to life sentences. *See* Dkt. 16, *supra*.

The Supreme Court has limited Eighth Amendment habeas challenges to LWOP sentences. *See Ewing*, 538 U.S. at 20 ("The Eighth Amendment . . . contains a 'narrow proportionality principle' that "applies to noncapital sentences."). "The only clearly established law for an Eighth Amendment challenge to a noncapital sentence is the "gross disproportionality principle," which prohibits sentences that are grossly disproportionate to the crime committed. *Miles v. Runnels*, 450 Fed. Appx. 653 (9th Cir. 2011) citing to *Lockyer v. Andrade* (*Andrade II*), 538 U.S. 63, 73, (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring in part and concurring in the judgment)); *see also Taylor v. Myles*, 747 Fed. Appx. 601 (9th Cir. 2019) ("The Cruel and Unusual Punishments Clause prohibits "extreme sentences that are 'grossly disproportionate' to the crime.").

Obtaining relief under the Eighth Amendment is difficult. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. at 272; *see also Miles v. Runnels*, 450 Fed. Appx. 653 (9th Cir. 2011). As the Supreme Court stated, the Eighth Amendment "gross disproportionality principle is applicable to sentences for terms of years[ ]" only in "exceedingly rare[,]" and "extreme[,]" and "extraordinary" cases. *Andrade*, 538 U.S. at 70, 72–73 and 77 (finding it was not an unreasonable application of clearly established federal law for state courts to affirm sentence of two consecutive terms of 25 years to life in prison under California's Three Strikes law for petty theft with a prior petty theft conviction) (internal quotation marks and

1    citation omitted).

2         Obtaining relief is also difficult because the Supreme Court has rejected the argument a

3    LWOP sentence entitles a habeas petitioner to special Eighth Amendment review. *See Harmelin*

4    *v. Michigan*, 501 U.S. at 995-6 (1991) ("The Eighth Amendment provides no proportionality

5    guarantee."). Rather, the Supreme Court has consistently examined the gravity of the crime in

6    relation to the severity of the punishment and has held the Eighth Amendment "forbids only

7    extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J.

8    concurring). Where the crime is violent or especially grave, a life sentence without the possibility

9    of parole is constitutional. *Id*. at 1002-04.

10        In *Harmelin*, the petitioner contended his LWOP sentence for possessing 650 grams of

11   cocaine was unconstitutional because the crime he committed was nonviolent and victimless, i.e.

12   it was not grave and serious. The Supreme Court stated "Petitioner's suggestion that his crime

13   was nonviolent and victimless . . . is false to the point of absurdity. To the contrary petitioner's

14   crime threatened grave harm to society," *id.* at 1002; the Court concluded "the severity of

15   petitioner's crime brings his sentence within constitutional boundaries." *Id.* at 1004.

16        The Court also rejected the argument the Eighth Amendment required a comparative

17   analysis between a petitioner's LWOP sentence and sentences imposed for other crimes in the

18   state of conviction or imposed in other jurisdictions. The Court stated: "given the serious nature

19   of petitioner's crime, no such comparative analysis is necessary." *Id*.

20        Further the Court rejected the argument a LWOP sentence imposed without consideration

21   of mitigating factors violates the Eighth Amendment. The petitioner in *Hamelin* argued the

22   Eighth Amendment required consideration of the fact he had no prior felony criminal history.

23   The Court rejected the argument ruling "Petitioner's 'required mitigation' claim like his

1  proportionality claim" is applicable to death penalty cases but is inapplicable to cases

2  challenging a LWOP sentence. *Id.* at 995-96.

3        Petitioner raises arguments made in *Hamelin* and rejected by the Supreme Court.

4  Petitioner characterizes the crime he committed as a non-serious and non-violent traffic accident,

5  i.e. not grave or violent. The facts found by the state court contradict this characterization. The

6  state court found petitioner was driving at a high rate of speed, ran a red light and struck another

7  vehicle. The driver of the struck vehicle had to be cut out of his vehicle and suffered a lacerated

8  spleen, a fractured vertebra, and extensive cuts to the head and face. The driver also sustained

9  nerve damage affecting the functioning of his right arm and to this day remains in pain on a daily

10  basis. The state court rejected petitioner's arguments that vehicular assault is only a class B

11  felony, that the mental state of the crime of conviction, recklessness, and the degree of harm do

12  not warrant a LWOP sentence. *Id.* at 12. The state court rejected these arguments finding

13  petitioner caused "*life threatening*" injury and that the constitution does not mandate a lesser

14  punishment. *Id.* at 13.

15        The record supports a finding that the state decision correctly found the crime for which

16  petitioner was convicted is especially serious or grave, and that the state decision upholding the

17  LWOP sentence imposed is not contrary to or an unreasonable application of clearly established

18  Supreme Court law. *See Hamelin*, at 1002-1004 (Where the crime is violent or especially grave,

19  a life sentence without the possibility of parole is constitutional.).

20        Moreover, a review of Supreme Court cases undercuts petitioner's contention that the

21  crime he committed is not serious or grave, and grossly disproportionate to the sentence

22  imposed. In *Harmelin*, *supr*a, the Supreme Court upheld a life sentence where the defendant was

23  a first-time offender who was convicted of possession of 650 grams of cocaine. In *Rummel v.*

REPORT AND RECOMMENDATION- 29

1    *Estelle*, 445 U.S. 263 (1980) the Supreme Court upheld a life sentence imposed for petitioner's

2    third felony conviction for stealing $120.75 by false pretenses. Rummel's two prior predicate

3    felonies involved obtaining $80 through fraudulent use of a credit card and passing a forged

4    check in the amount of $28.36. *Id.* at 265. And in *Lockyear v. Andrade*, 538 U.S. 63, (2003),

5    Andrade stole $150 worth of videotapes from two stores. The state court imposed two

6    **consecutive** prison terms of 25 years to life. The Supreme Court reversed the Ninth Circuit's

7    grant of relief.  In *Ewing v. California*, 538 U.S. 11 (2003), the Supreme Court found the Eighth

8    Amendment was not violated where a defendant received a 25 year sentence for stealing three

9    golf clubs worth $1200.  Further the Court of Appeals for the Ninth Circuit in *Mason v. Hamlet*,

10   94 Fed. Appx. 575, 577 (9th Cir. 2004) upheld a 95 year to life sentence for a residential

11   burglary conviction. *See also Windham v. Cate*, 594 Fed. Appx 911 (9th Cir. 2014) (75 year to

12   life sentence for failing to register as a sex offender does not violate the Eighth Amendment).

13          In contrast petitioner committed a crime in which he seriously injured a person. Petitioner

14   also has a lengthy and serious adult criminal history including convictions for robbery in the first

15   degree and rape of a child in the first degree. The Eighth Amendment proscribes imposition of

16   "grossly disproportionate" sentences but as discussed above, the Supreme Court has rejected

17   challenges to LWOP sentences cases involving defendants committing less serious crimes than

18   the crime petitioner committed and who also had less serious criminal history than petitioner's

19   history. The Supreme Court has also noted legislatures have broad discretion to fashion a

20   sentence that fits within the scope of the proportionality principle-the "precise contours" of

21   which "are unclear." *Harmelin*, 501 U.S., at 998 (Kennedy, J., concurring in part and concurring

22   in judgment).

23          The state court's determination is thus not contrary to clearly established Supreme Court

REPORT AND RECOMMENDATION- 30

1   law. Also, to the extent both petitioner and counsel attempt to introduce new evidence in support

2   of the argument that petitioner's sentence is grossly disproportionate to sentences imposed in

3   other places via declarations filed with their briefs, that attempt fails. As noted above, *Pinholster*

4   prohibits such supplementation. Given the facts of petitioner's offense and his criminal history,

5   the Court concludes the state court decision upholding petitioner's LWOP sentence for vehicular

6   assault is not contrary to or an unreasonable determination of clearly established Supreme Court

7   law.

8        Petitioner also argues the LWOP sentence violates the Eighth Amendment because of its

9   severity in comparison to sentences imposed in Washington and other states. The state court

10  noted petitioner was sentenced under the three-strike state sentencing scheme. Two of

11  petitioner's prior convictions are class A felonies and under the state three-strike sentencing law,

12  all defendants with two such prior offenses and who commit a most serious offense, which under

13  state law includes the vehicular assault petitioner committed, receive the same sentence: life

14  without the possibility of parole. *Id* at 11. As such the state court found comparing the

15  punishment petitioner received compared to sentences imposed in cases where the three-strike

16  rule did not apply "has little bearing on proportionality." *Id.* In any event, as noted above, the

17  Supreme Court has stated "given the serious nature of petitioner's crime, no such comparative

18  analysis is necessary." *Id.*  Additionally, because the Eighth Amendment provides no

19  proportionality guarantee, *Hamelin,* 501 U.S. at 995-6, the argument the Eighth Amendment is

20  violated because his sentence is not proportionate to other sentences in Washington and

21  elsewhere fails.

22       Petitioner further argues his sentence violates the Eighth Amendment because it was

23  imposed without consideration of mitigating factors such as the *mens rea* of the crime. But the

REPORT AND RECOMMENDATION- 31

Supreme Court has clearly ruled the Eighth Amendment does not require consideration of such factors in adult non-capital sentencing proceedings.

In sum, neither counsel nor petitioner show the state court decision is contrary to or an unreasonably application of clearly established supreme court law. Counsel relies heavily on the Supreme Court decisions in *Graham, Solem, Miller, Harmelin,* and *Woodson* in articulating protections they believe are afforded by the Eighth Amendment.  Dkt. 41 at 12-23. Counsel does not argue the state court's decision is contrary to or an unreasonable application of the above Supreme Court law. In any event, it is evident as discussed above the state court decision, is not contrary to the holdings of any of these cases.

The state court also did not unreasonably apply clearly established Supreme Court law. "Under § 2254(d)(1)'s 'unreasonable application' clause, a federal habeas court may not grant habeas relief simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S., at 411. Instead, the state court's application must be objectively unreasonable. *Id*., at 409. The Eighth Amendment "gross disproportionality" bar reserves a constitutional violation for only the extraordinary case. In applying this principle for § 2254(d)(1) purposes, it was not an unreasonable application of clearly established Supreme Court law for the state court to affirm petitioner's LWOP sentence. The Court accordingly recommends the Eighth Amendment claim be denied.

**Claim 3**       **The state court denied Petitioner due process (equal protection) when it left unresolved claims under the Washington State Constitution, that petitioner's sentence is/was cruel and unusual punishment, a 8th and 14th Amendment violation.**

Petitioner argues the state court erred in failing to find his life sentence violates

1    Washington State law. Dkt. 16, Attachment 1 at 54.  Federal habeas corpus relief is available

2    only on behalf of a person in custody in violation of the Constitution or laws or treaties of the

3    United States. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (Federal court

4    may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in

5    violation of the Constitution or laws or treaties of the United States.). Petitioner's claim

6    regarding a violation of state law is thus not cognizable on federal habeas review and should be

7    dismissed.

8    **Claim 4**        **The unwarranted use of a stun belt through-out petitioner's**
                        **jury trial violated his rights to due process under the 14th**
9                       **amendment.**

10        Petitioner claims the "stun belt"[2] he was required to wear during his jury trial violated his

11   Fourteenth Amendment right to due process. Dkt. 16, Attachment 1 at 69; Attachment 2 at 1-6.

12   Petitioner argues the trial court abused its discretion in ordering him to wear the belt because 1)

13   there was no evidence he was a flight risk or likely to injure someone; 2) he did not knowingly or

14   intelligently waive his right to be free of restraints; 3) the trial judge acted arbitrarily, failed to

15   place its concerns about safety on the record, and failed to consider less restrictive alternatives;

16   4) wearing the belt made petitioner anxious and affected his ability to present a defense; and 5)

17   restraints are presumptively prejudicial and therefore his conviction should be reversed. *Id.*

18        The state court of appeals rejected these claims and made the following findings:

19            Here, the trial court conducted a hearing in which the court
              considered declarations of jail personnel as well as Rook's
20            testimony. The court also asked Rook for input on other
              alternatives and he agreed to use the Band–It. The court then
21            ordered Rook to wear the Band–It, citing security concerns about
              the physical layout of the courtroom, the fact that Rook was facing

22

23   ───────────────────
     [2] Although petitioner alleges he was ordered to wear a "stun-belt," the record shows he was
     ordered to wear a "Band It," a fabric band worn under his clothes.

a life sentence, and Rook's express agreement that he would wear it.

While the court did not enter written findings, the record supports the court's ruling. As noted above, the jail presented evidence that demonstrated "a lack of deference to authority and frequent and repeated displays of rage and lack of control, not to mention threats and assaults." While Rook denied these allegations, the trial court was entitled to resolve issues of credibility in making factual findings. The record also shows that Rook continued to be disruptive during trial, even forcing the trial court at one to point to warn him that he was "one comment from [the court] asking the officer to activate [the Band–It]" when he shouted out to the jurors as they were being excused at the close of the evidence. Because the trial court is in the unique position to observe and assess the actual demeanor of the defendant, we accord it due deference in exercising its discretion. The fact that a defendant "cannot behave in an orderly manner while in the courtroom" does provide a reasonable basis upon which a court may exercise its discretion and order restraints. Here, given the evidence presented by the jail and the defendant's conduct during the proceedings, the trial court did not abuse its discretion by ordering the Band–It.

Additionally, the trial court's other concerns—layout of the courtroom and seriousness of the charge—are legally sufficient to support its ruling. The trial court also considered other alternatives and in fact when asked for his input, Rook agreed to use of the Band–It. While Rook argues that standing alone, each of these might not support ordering restraints, they are nonetheless appropriate factors the court properly considered in the determination.

Rook also contends that the trial court erred by considering his consent to wear the Band–It because it was not constitutionally valid consent. Rook asserts that he had a constitutional right not to wear the Band–It and the trial court could not extract a waiver of that right unless it met the constitutional standard of being a knowing, voluntary, and intelligent relinquishment of that right. He argues that the trial court's failure to advise him that he had such a constitutional right invalidates any waiver of the right.

Rook's argument is misplaced. He cites no case law requiring such a waiver on the record, but simply analogizes to the waiver of other constitutional rights, such as the right to counsel and right to remain silent. The right to be free from restraints in front of the jury is not such an absolute constitutional right requiring the

waiver he desires. Rather, the trial court has the discretion to order restraints "when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape," so long as they do not offend the constitutional rights to the presumption of innocence, to testify on one's own behalf and to confer with counsel during the course of a trial. Here, the record does not indicate that the Band–It would have interfered with these rights as it was not visible to the jury and did not visibly restrict Rook's movement or ability to participate in the trial. Rather, the evidence presented was that the device would only be activated if Rook tried to escape or commit an assault, neither of which he attempted, and the record fails to show that it otherwise restricted his ability to physically move his body as he testified or conferred with counsel. Thus, Rook's agreement to wear the Band–It did not amount to an invalid waiver of his constitutional rights.

Even if Rook could show that the court's order amounted to an unconstitutional restraint, he fails to show prejudicial error warranting reversal. A claim of unconstitutional shackling is subject to harmless error analysis. The error is harmless unless the defendant shows that "the shackling had substantial or injurious effect or influence on the jury's verdict." A showing of such prejudice "requires evidence that the jury saw the restraints or that the restraints substantially impaired the defendant's ability to assist in his trial defense."

Here, it is undisputed that the Band–It was not visible to the jury, and Rook does not point to any other tangible resulting prejudice. Rather, he simply asserts that it interfered with his mental faculties and constitutional right to defend himself and work with counsel. While he cites case law from other jurisdictions and law review articles about the possible negative effects of stun belts, he offers no evidence in the record to support his claim. As in *Monschke*, where the court held that a defendant failed to establish prejudice from the court's decision that he wear a stun belt, Rook "offers only conclusory statements that the belt hampered his participation in his trial defense." And, as the State points out, the record reveals in fact that the Band–It had little effect on his behavior as he continued to be obstreperous and disruptive even after being ordered to wear it.

Dkt. 27, Exhibit 2.

REPORT AND RECOMMENDATION- 35

Although a criminal defendant has a constitutional right to be free of visible restraints in the presence of the jury absent an essential state interest that justifies the physical restraints, *Deck v. Missouri*, 544 U.S. 622, 629 (2005), petitioner's claim fails.

First, restraints should be employed "only in the presence of a special need," i.e., when necessary to maintain physical security in the courtroom, to prevent escape, or to preserve courtroom decorum. *Id.* at 628. But this rule which the Supreme Court articulated in *Deck* addressed the right to be free of visible restraints. The Supreme Court, however, has not specifically held *Deck* applies to cases such as this one in which a criminal defendant is ordered to wear restraints that are **not** visible to the jury. Hence, the state court's determination in this case cannot be deemed to be contrary to or an unreasonable application of clearly establish Supreme Court law. Additionally, circuit law does not support petitioner's claim. In *Williams v. Woodford*, 384 F.3d 567, 592 (9th Cir. 2004), the Court stated "[w]hen the jury never saw the defendant's shackles in the courtroom, we have held that the shackles did not prejudice the defendant's right to a fair trial."

Second, in this circuit, a criminal defendant must show four things to establish that restraints ordered at trial violate the due process clause: (1) defendant was physically restrained in the presence of the jury; (2) the jury saw the restraint; (3) the restraint was not justified by state interests; and (4) defendant was prejudice by the restraint. *U.S. v. Casares*, 788 F.3d 956, 966 (9th Cir. 2015) (citation omitted); *see also Cox v. Ayer*s, 613 F.3d 883, 890 (9th Cir. 2010). Petitioner fails to meet this test. There is no dispute that the band-it that petitioner wore was under his clothes and that the jury never saw it.

The state court found the trial judge conducted a hearing, considered information from the jail that petitioner was volatile, engaged in frequent and repeated displays of rage and lack of

1  control, mentioned threats and assaults, was disruptive, and was cited for a number of

2  infractions. The Court asked petitioner of there were alternatives to the Band It, and expressed

3  concerns about the ability to maintain security in light of the physical layout of the courtroom,

4  without the Band It, and how petitioner life sentence raised security concerns. Petitioner argues

5  none of these findings justify requiring him to wear the Band. But the Court cannot second guess

6  the state trial judge's discretionary determination about security risks petitioner posed and the

7  need to maintain courtroom decorum given the facts set forth in the record. The record shows the

8  trial judge was presented with evidence that petitioner posed a security risk. This is thus not a

9  case in which the trial judge ordered the restraints for no reason at all. While petitioner disagrees

10  with the trial judge's decision the Court cannot say the trial judge acted in an objectively

11  unreasonable manner in ordering petitioner to wear the Band It restraint.

12      And finally, as noted above where the jury never saw the defendant's restraints in the

13  courtroom, the restraint does not prejudice the defendant's right to a fair trial. *Williams v.*

14  *Woodford*, 384 F.3d at 592.

15      In sum, for the reasons above, the state court's determination that petitioner's due process

16  rights were not violated due to the concealed restraints he wore is neither contrary to or an

17  unreasonable application of clearly established Supreme Court law. The claim should

18  accordingly be dismissed.

19  **Claim 5        The state failed to prove beyond a reasonable doubt that**

20  **                petitioner was the proximate cause of the traffic accident in**
   **                violation of the 5th, 6th, and 14th amendments.**

21      Petitioner claims the state failed to prove beyond a reasonable doubt that he was the

22  proximate cause of the auto accident. Dkt. 16, Attachment 2 at 27. Petitioner testified at trial that

23  Traci Rectenwald, his passenger, knocked his glasses off a block away from the intersection at

REPORT AND RECOMMENDATION- 37

1    which he struck the other car. Dkt. 27, Exhibit 37 at 23. He argues Ms. Rectenwald's actions are

2    a superseding intervening event and that he is therefore not guilty of vehicular assault. Dkt. 16,

3    Attachment 2 at 27. The state court of appeals rejected the claim. The state court noted the jury

4    was instructed the crime of vehicular assault requires a causal connection between the substantial

5    bodily harm to a person and the driving of the defendant so that the act performed by defendant

6    was a proximate cause of the resulting substantial bodily harm.  The jury was also instructed that

7    "proximate cause means a cause which in a direct sequence, unbroken by any new independent

8    cause, produces substantial bodily harm, and without which the substantial bodily harm would

9    not have happened." Dkt. 27 at 2. The state court found while petitioner "argues there was an

10   alternative explanation of his driving, the jury was entitled to discount this evidence as not

11   credible and we may not disturb the jury's factual determination on appeal." Dkt. 27, Exhibit 2.

12          The state court's finding is not contrary to Supreme Court law. The Supreme Court has

13   held it is the responsibility of the jury—not the court—to decide what conclusions should be

14   drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the

15   ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.

16   *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Moreover, a federal court may not grant habeas

17   relief on sufficiency of the evidence grounds simply because the federal court disagrees with the

18   state court. The federal court instead may do so only if the state court decision was "objectively

19   unreasonable." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

20          Here, petitioner testified he was driving the car, ran a red light, struck another car, and

21   that "the accident was my fault." Dkt. 27, Exhibit 37 at 27. The jury convicted petitioner of

22   vehicular assault after being instructed that to convict they were required to find petitioner

23   proximately caused serious bodily injury. The jury obviously rejected petitioner's claim the

REPORT AND RECOMMENDATION- 38

collision was caused by Ms. Rectenwald, and that petitioner is innocent because he did not proximately cause the collision and injuries. The record in this case does not establish the state court of appeals' decision is objectively unreasonable and the habeas claims should therefore be dismissed.

**Claims 6-10, 17, 18    Effectiveness of Counsel**

A criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U. S. Const., Amdt. 6. This right requires effective counsel in both state and federal prosecutions, even if the defendant is unable to afford counsel. *Gideon v. Wainwright*, 372 U. S. 335, 344 (1963). Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 557 U.S. ___ (2015) (*citing Strickland v. Washington*, 466 U. S. 668, 687 (1984))(emphasis in original).

Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. A reasonable probability is less than a preponderance of the evidence. *See id*. at 693.

**Claim 6            Defense counsel was ineffective because he refused/failed to raise conduct of another in violation of the 5th, 6th, and 14th Amendments.**

Petitioner claims "he was not the sole cause of the auto-accident" and that "Ms. Rectenwald accidentally hit Mr. Rook in the face, knocking-off his required prescription glasses causing the accident." Dkt. 16, Ex. 2 at 29. Petitioner contends trial counsel was accordingly ineffective by failing to (1) raise a conduct of another defense (i.e. Ms. Rectenwald caused the accident), (2) call Ms. Rectenwald as a witness, and (3) request jury instructions on conduct of another. *Id.*

1    The first contention fails. In his opening statement, trial counsel told the jury "Mr. Rook

2    had his glasses knocked off his face making it very difficult, if not impossible to see. And the

3    evidence will show that that's, in fact, what caused the accident." Dkt. 27, Exhibit 33, page 12 of

4    transcript. Defense counsel also called petitioner as a witness and petitioner told the jury that Ms.

5    Rectenwald knocked his glasses off and caused the auto collision. The record thus establishes

6    trial counsel raised the defense and petitioner's claim that he did not should be dismissed.

7    The second contention, that trial counsel was ineffective by not calling Ms. Rectenwald,

8    also fails. The state court of appeals rejected this claim on the following grounds:

9       Trial counsel's decision not to call Rectenwald was clearly a
        matter of strategy. First Rectenwald had made several prior
10      statements inconsistent with the testimony Rook alleges she would
        have given at trial. When Rectenwald was interviewed
11      immediately after the accident, she told Officer Adams that Rook
        'was driving really crazy and erratic and I don't know why and it
12      was scaring me.' She stated that after Rook saw the officers, 'he
        sped up and then we hit the other car in the middle of the
13      intersection.' Further while the case was pending Rook and
        Rectenwald had a series of telephone conversations that were
14      recorded by the jail. Some of Rectenwald's statemetns during these
        conversations would have seriously damaged her credibility had
15      she testified at trial. For example, Rook told Rectenwald that he
        would not plead guilty if she testified for him 'but I need to talk to
16      you in person here okay, through the glass, you need to come see
        me okay." Rectenwad said she would 'do what I gotta do, but I
17      don't know what to do.' Rook told her 'well you come here and
        I'm gonna tell you.' He then stated 'you're going to have to ball up
18      okay . . .[t]here's nothing they can do to yo okay. So you're, you're
        gonna be my . . . you're my, you my savior is what you are.'
19      Rectenwald agreed to 'do everything in her power.' After
        reviewing the tapes of the conversations, trial counsel stated:
20      Based on the substance of those telephone calls, I don't believe
        that I – I will not be calling Ms. Rechtenwald [sic].

21   Dkt. 27, Exhibit 26, pages 9-10. The Washington Supreme Court similarly rejected petitioner's

22   claim stating:

23

REPORT AND RECOMMENDATION- 40

> As indicated, Mr. Rook asserts trial counsel was ineffective in not putting Ms. Rectenwald on the stand. For the reasons already stated, counsel had valid tactical grounds for not calling her as a defense witness: she was so vulnerable to impeachment that no competent attorney would have put her on the stand.

Dkt. 27, Exhibit 28 at page 5. Petitioner presents no evidence that the state court's findings are factually incorrect. Rather he argues his trial lawyer did a bad job, and that the outcome of his case might have been different if his lawyer had called Ms. Rectenwald to the stand. Dkt. 16, Exibit. 2, pages 29-36. These arguments do not undermine reasonableness of the state court of appeals and Washington Supreme Court determinations that trial counsel's decision not to call Rectenwald was not deficient because counsel made a strategic decision not to call her as a witness. *See Strickland*, 466 U.S. at 689 (to show deficiency, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy" under the circumstances (citation omitted)). The state court identified specific facts that showed trial counsel in fact made a tactical decision not to call Ms. Rectenwald as a witness including trial counsel's own statement that based upon a review of the phone calls between Ms. Rectenwald and petitioner the defense was not calling her as a witness. The state court decision is thus not objectively unreasonable or contrary to Supreme Court law, and should be affirmed.

And finally, petitioner argues trial counsel was ineffective by failing to request a jury instruction on conduct of another, i.e., that the car collision was caused by Ms. Rectenwald's conduct. Petitioner claims he was entitled to the instruction under state law, arguing:

> Had defense counsel been actually working to defend Mr. Rook a simple search of the WPIC's [Washington Pattern Instructions Criminal] there is a defense and jury instruction, that could have only supported Mr. Rook's defense, but could have assisted the jury in understanding the law of the case better.

1   Dkt. 16, Attachment 2, pages 31-32.  The Washington Supreme Court rejected this argument.

2   Citing *State v. Roggenkamp,* 115 Wn. App. 927, 945 (2003), the Washington Supreme Court

3   noted "a superseding intervening cause has to occur after the defendant committed the act or

4   omission and the intervening cause must not have been foreseeable to the defendant." Dkt. 27,

5   Exhibit 28, page 6. The Court found "the immediate cause of the crash and the injuries suffered

6   by the victim was Mr. Rook's act or recklessly driving through a red light which occurred after

7   Ms. Rectenwald allegedly tossed the drink on Mr. Rook's lap and knocked off his glasses. As to

8   foreseeability, Mr. Rook still had an opportunity to pull over to the side of the road after Ms.

9   Rectenwald's alleged interference." *Id.* The Washington Supreme Court concluded "assuming

10  counsel should have asked for the instruction, the trial court would not have allowed it." *Id.*

11          In short, the Washington Supreme Court held petitioner was not entitled to the conduct of

12  another instruction as a matter of state law. As such habeas relief is foreclosed for two reasons.

13  First a federal court in a habeas proceeding cannot reexamine state-court determinations on state-

14  law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). And second, the state court found,

15  in any event, that counsel was no ineffective because had he requested it, the trial court as a

16  matter of law, would have rejected the request. For the reasons above, claim six should be

17  dismissed.

18  **Claims 7**      **Defense counsel was ineffective when he refused and/or failed to object when**
                    **the prosecutor interfered with and intimidated a defense witness from**
19                  **testifying in violation of the 5th Amendment.**

20  **Claim 11**     **The state committed misconduct when it interfered and**
                    **excluded a defense witness testifying at petitioner's trial in**
21                  **violation of the 5th and 6th Amendments.**

22          In claims 7 and 11, petitioner contends the state prosecutors impermissibly prevented Ms.

23  Rectenwald from testifying, that defense counsel failed to object to the prosecutors' actions, and

REPORT AND RECOMMENDATION- 42

1    that defense counsel colluded with the prosecutors to make sure Ms. Rectenwald would not

2    testify. Dkt. 16, Dkt. 16, Exhibit. 2, pages 36-40; 67-69; Exbit 3, at 1. Petitioner's claim relies

3    upon a declaration Ms. Rectenwald gave. *Id.* The state court of appeals rejected the claim

4    finding:

> Rook contends that the State 'interfered' with Rectenwald's
> testimony and that trial counsel was ineffective for failing to object
> to this interference. Rook supports this claim with Rectenwald's
> affidavit in which she states that when she arrived at the
> courthouse to testify in Rook's defense, the prosecutors
> 'surrounded' her and in a threatening manner, ordered her to leave
> the courthouse. But this statement conflicts with another, earlier
> affidavit of Rectenwald that Rook provides, in which Rectenwald
> states that Rook's trial counsel was the one who prevented her
> from testifying and ordered her to leave the courthouse. And the
> record amply demonstrates that trial counsel did not plan to call
> Rectenwald as a witness in any event due to serious credibility
> issues.

12   Dkt. 27, Exhibit 26, page 11.  The Washington Supreme Court also addressed petitioner's claim

13   stating:

> Mr. Rook again relying on Ms. Rectenwald's declaration, further
> asserts that the State (and defense counsel) prevented Ms.
> Rectenwald from testifying on his behalf. Ms. Rectenwald claims
> she was confronted by prosecutors who intimidated her into not
> testifying for the defense. The declaration is so lacking in
> credibility that no reference is required. Defense counsel stated on
> the record that she would not be called as a defense witness, and
> for good reason. She was so problematic a witness for the defense
> that the State would have welcomed her testimony.

19   Dkt. 27 exhibit 28, page 4.

20        Petitioner's claims are based upon the argument that although Ms. Rectenwald made

21   different statements about why she was not called as a witness, she gave one declaration that she

22   was prevented from testifying by the state prosecutors. In weighing the various statements Ms.

23   Rectenwald gave, this court cannot second-guess a state court's fact-finding process. Rather

REPORT AND RECOMMENDATION- 43

1  habeas relief can be granted only if the state courts' factual determinations are objectively

2  unreasonable in light of the evidence presented in the state-court proceeding. This court must

3  also presume the state-court factual findings are correct. Petitioner must overcome this

4  presumption by clear and convincing evidence, but has failed to do so. The only direct evidence

5  of prosecutorial interference are Ms. Rectenwald's declarations or affidavits. The state court

6  found Ms. Rectenwald's inconsistent declarations showed she was a witness lacking credibility

7  and that in any event, trial counsel decided not to call her as a witness based upon a strategic

8  decision.  Petitioner presents insufficient evidence that defense counsel and the prosecution

9  colluded to keep Ms. Rectenwald off the stand. Rather as noted above, the record shows trial

10  counsel stated, after hearing the jail recorded conversations between Ms. Rectenwald and

11  petitioner, he was not calling Ms. Rectenwald to the stand. Based on the record in this case, the

12  Court cannot say the state courts' factual determinations are unreasonable. Claims 7 and 11

13  should accordingly be dismissed.

14  **Claim 8**       **Defense counsel was ineffective when he refused to investigate**
                      **Mr. Kalaluhi's medical diagnosis, and when he failed to**
15                    **investigate Ms. Rectenwald' s intoxication in violation of the**
                      **6th Amendment.**
16

17          Petitioner argues trial counsel was ineffective by failing to investigate Mr. Kahalui's

18  injuries. Dkt. 16, Attachment 2 at 42. In specific he argues he "believes Mr. Kalaluhi did not

19  suffer substantial bodily harm of an L-4 transverse process fracture." *Id.*  He also argues Dr.

20  Baker, the emergency room physician who testified about the fracture did not have "first hand"

21  knowledge to say Mr. Kalaluhi suffered a fracture because he was not the radiologist who took

22  the images of Mr. Kalaluhi's spine. *Id* at 43.  The court of appeals rejected the argument

23  finding:

1
2
3
4

> Doctors testifies that Kalaluhi had a lacerated spleen and fractured lumbar vertebrae, and that the spleen injury could have become life-threatening. And Kalaluhi testified that he missed approximately two month of work and continued to suffer back, hip and neck pain. Rook's assertion that he could been acquitted if trial counsel had determined that Kalaluhi did not actually suffer these injuries is completely unsupported by the evidence.

5  Dkt. 27, Exhibit 26, page 12. The record supports the state courts factual finding. *Id.* Exhibit 40,

6  pages 18-43. As the state courts' factual determinations cannot be said to be objectively

7  unreasonable in light of the evidence presented in the state-court proceeding, petitioner's claim

8  fails.

9        Petitioner also argues trial counsel was ineffective by failing to investigate Ms.

10  Rectenwald's intoxication on the night of the collision. He claims counsel's failure to investigate

11  was part of a deliberate attempt to "keep her testimony out of the record," and that since he did

12  not investigate her fully, she should be "viewed as a credible witness." Dkt. 16 Attachment 2 at

13  46. The claim is unsupported by the record. As discussed above trial counsel told the jury in his

14  opening statement that Ms. Rectenwald was drinking at the time of the collision, knocked

15  petitioner's glasses off and caused the collision. Petitioner testified Ms. Rectenwald was drinking

16  heavily the day of the accident. Dkt. 27, Exhibit 37, page 15 (drank almost a fifth of Black

17  Velvet that day). The fact Ms. Rectenwald was drinking heavily on the day of the collision was

18  thus known to defense counsel, and not a fact that he was unaware of and should have

19  investigated. Moreover, the jury also knew about Ms. Rectenwald's heavy drinking because

20  petitioner testified about it, and defense counsel discussed it as early as the opening statement.

21        The record thus does not support petitioner's claim trial counsel did not investigate Ms.

22  Rectenwald because he wanted to keep her testimony out of the record. Rather counsel

23

1  considered calling Ms. Rectenwald but after hearing the jail recorded conversations she had with

2  petitioner, made the tactical decision not to call her. As the state court of appeals noted:

3              he argues that if trial counsel knew about Rectenwald was drinking
             heavily, he could have argued more effectively that Recktenwald
4              was the proximate cause of the accident. But Rectenwald's
             intoxication along with her lack of credibility, was the primary
5              reason for trial counsel not to call her as a witness.

6  Dkt. 27, Exhibit 26, page 11, n. 4.  In sum, the state courts' factual determinations are not

7  unreasonable, and claim 8 accordingly should be dismissed.

8  **Claim 9          Defense counsel was ineffective when he failed to impeach Sgt.**
            **Flynn, Officer Conner, and Officer Adams in violation of the**
9            **6th Amendment.**

10        Petitioner contends defense counsel was ineffective by failing to "impeach" Sgt. Flynn,

11  Officer Connor and Officer Adams regarding inconsistent statements they made, perjured

12  testimony that gave, and false police reports they filed. Dkt. 16, Ex. 2 at 48-49. The state court of

13  appeals rejected the claim finding:

14              Rook claims trial counsel failed to adequately impeach officers
             who testified inconsistently. He appears to argue that Deputy
15              Connor's police report stated that Sergeant Flynn had called for a
             K9 track when Sergeant Flynn had not. He also argues that Deputy
16              Connor's testimony that he advised Rook of his constitutional
             rights was false and contends Deputy Connor did not actually
17              arrest him at the time of the accident. But trial counsel specifically
             questioned Deputy Connor about all of these issues. Rook fails to
18              articulate which questions he believes trial counsel should have
             asked or how these questions would have had an effect on the
19              outcome of the trial.

20  Dkt. 27, Exhibit 26 at 11.  The Washington Supreme Court rejected the claim stating:

21              Mr. Rook also argues defense counsel did not adequately cross-
             examine State witnesses. But this is a classic example of counsel
22              making tactical decisions in the course of trial, which can be
             challenged as ineffective assistance. *Grier*, 171 Wn.2d at 33. Mr.
23              Rook identifies no instances where defense counsel made
             unreasonable tactical decisions.

REPORT AND RECOMMENDATION- 46

1  *Id* at Exhibit 28, page 6.

2      The factual findings of the state court are presumed correct and petitioner has not

3  overcome the presumption of correctness afforded to the state court's factual findings. 28 U .S.C.

4  § 2254(e)(1). Petitioner has a burden to show the state courts' rulings are contrary to, or involved

5  an unreasonable application of, clearly established federal law, as determined by the United

6  States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

7  in light of the evidence presented in the state court proceeding. Petitioner fails to do so. The

8  Court notes the trial judge addressed the issue of whether the defense would be permitted to

9  questions the officers about perjured testimony. The trial judge asked defense counsel whether

10  there was any authority that allows one witness to testify that another witness is perjuring

11  himself. Dkt. 26, Exhibit 32 at 19. Defense counsel indicated there was none, and that he did not

12  intend to elicit that type of testimony. *Id.* However, during the trial, defense counsel cross-

13  examined the officers. *See* Exhibits 34, 39, and 40. This is thus not a case in which defense

14  counsel failed to question the officers who arrived at the scene of the car collision.

15      Petitioner argues the officers lied. In support, he argues he did not make certain

16  statements to the officers. But that cannot be the basis to establish the officers lied. If it were, a

17  criminal defendant could always defeat the testimony of an officer by claiming he or she never

18  made the statement. Petitioner also does not show how he was prejudiced by his lawyer's

19  performance. The jury did not find petitioner guilty of vehicular assault by driving under the

20  influence of an intoxicant, and hence was not prejudiced by counsel's conduct regarding any

21  police testimony related to intoxicants. Petitioner complains about testimony regarding whether a

22  K-9 dog was called or not, and testimony regarding the extent of damage to Mr. Kalaluhi's car.

23  However he presents nothing showing why calling or not calling a K-9 is germane to the case, or

REPORT AND RECOMMENDATION- 47

how counsel's performance regarding a K-9 affected the outcome of the case. A K-9 dog is often called to track a suspect not yet apprehended. Here, petitioner testified he was driving when his car struck Mr. Kalaluhi's car, and that he was contacted by police at the scene of the collision. There was thus never any question about petitioner's involvement in the car collision, or the need for "dog-tracking" evidence to establish this.

And as to the extent of the damage to Mr. Kalaluhi's car, the medical evidence established Mr. Kalaluhi suffered very serious and potentially life-threatening injuries as a result of being struck by the car petitioner drove through a red light. The condition of Mr. Kalaluhi's car does not undermine this fact. Hence counsel's performance as to the condition of Mr. Kalaluhi's car would not prejudice petitioner. The Court accordingly concludes the state courts' rulings are not contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The claim should therefore be dismissed.

**Claim 10        Defense counsel was ineffective when he failed to call subpoenaed defense witnesses in violation of the 6th Amendment.**

Petitioner contends defense counsel was ineffective by failing to call "Dr. Joel Gross and Dr. Otjen to refute the states expert." Dkt. 16, Exhibit 2 at 62. He argues these doctors performed the radiology examinations of Mr. Kalaluhi and that had counsel called them to the stand they would have provided testimony that Mr. Kalaluhi did not suffer substantial bodily harm, i.e. he did not have a fractured vertebrae. *Id.* at 63. As discussed in claim 8, the state court of appeals found "Rooks assertion that he could have been acquitted if trial counsel had determined Kalaluhi did not actually suffer these injuries [fractured vertebrae and lacerated spleen] is completely unsupported by the evidence." Dkt. 27, Exhibt 26 at 12.

REPORT AND RECOMMENDATION- 48

1    Petitioner disagrees. In support, he attached to his petition several medical records, and

2    points out several records indicate"[t]he lower transverse processes from L2 to L4 are poorly

3    demonstrated. Negative study." Dkt. 16, Exhibit 5 at 3 "Concern for unstable acetabular fracture.

4    No fracture found." *Id*. at 14. However, another record that petitioner submitted states "[t]here is

5    an L4 transverse process fracture and a right acetabular fracture on re-review of the films." *Id.* at

6    5. Given the medical records, the Court cannot say the state court unreasonably found that

7    petitioner's claim Mr. Kalaluhi did not suffer from fractured vertebrae is unsupported by the

8    evidence. The records show that there were initial questions about whether there was a fracture

9    but that upon re-review, a fracture was diagnosed. As to Mr. Kalaluhi's lacerated spleen injury,

10   the doctors that petitioner argues should have been called did not attend to that injury and thus

11   would not have controverted Dr. Baker's testimony about the severity of the lacerated spleen

12   injury. Claim 10 should accordingly be dismissed.

13   **Claim 17        Appellate counsel was ineffective when she failed to raise or
                        argue any issues on direct appeal related to pretrial and trial**

14                     **proceedings in violation of the 5th, 6th, and 14th Amendments.**

15   Petitioner contends appellate counsel was ineffective for failing to raise numerous

16   claims, which he subsequently raised himself in his personal restraint petition. Dkt. 16, Exhibit 3,

17   pages 18-23. The state court of appeals and the Washington Supreme Court rejected this claim

18   on the grounds that none of petitioner's claims have merit. Dkt. 27, Exhibit 26, page 13; Exhibit

19   28, page 6. "[A]ppellate counsel's failure to raise issues on direct appeal does not constitute

20   ineffective assistance when appeal would not have provided grounds for reversal." *Wildman v.*

21   *Johnson*, 261 F .3d 832, 840 (9th Cir.2001); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)

22   (failing to raise meritless argument on appeal does not constitute ineffective assistance of

23   counsel.). "A hallmark of effective appellate counsel is the ability to weed out claims that have

REPORT AND RECOMMENDATION- 49

no likelihood of success ..." *Pollard v. White*, 119 F.3d 1430, 1235 (9th Cir.1997). As discussed

above, the Court finds that none of petitioner's claims merit relief. The Court accordingly

concludes the state courts' determinations are not contrary to, or involved an unreasonable

application of, clearly established Supreme Court  law, or based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. Claim

17 should therefore be dismissed.

**Claim 12      The state failed to turn over discovery materials requested**
**during pretrial and trial proceedings in violation of the 5th and**
**14th Amendments.**

Petitioner contends the prosecution withheld exculpatory evidence in violation of state

law and the "Brady doctrine." Dkt. 16, Exhibit 3 at 2.  In specific, he argues the prosecution

withheld from him a copy of the recording of his jail telephone calls with Ms. Rectenwald. He

contends the recording would show Ms. Rectenwald stated Officer Adams took her statement

using a "note-pad and pen," and that the officer therefore lied when he testified he recorded her

statement.

The state court of appeals rejected petitioner's claim finding:

> Rook alleges that the State withheld exculpatory material evidence
> in violation of *Brady v. Maryland*, [citation omitted]. Specifically
> Rook argues that the State failed to disclose the recording of the
> jail telephone calls he exchanged with Rectenwald. *Brady*
> requires the State to disclose evidence that is favorable to the defense and
> material to guilt or punishment [citation omitted]. But Rook fails to
> establish a *Brady* violation because the record is clear that Rook
> was represented at the time and the State provided the recordings
> to Rook's trial counsel who listened to them. And Rook provides
> no support for his contention that the State was also required to
> personally provide him with a copy and ensure that he was
> permitted to listen to them in custody.

Dkt. 27, Exhibit 26, page 14. *Brady* applies to evidence that "is known to the State and not

disclosed to the defendant." *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015). *Brady*,

REPORT AND RECOMMENDATION- 50

however does not apply to "information already known to the defense (or that could have been determined through reasonable diligence)," *United States v. Motta*, 2012 WL 4633899, at *2 (D. Haw. Oct. 1, 2012); *see also Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013) (finding that, because defendant's attorneys possessed the "salient facts" to access the alleged Brady evidence, "[t]here was no suppression of this easily attainable evidence"); *Bonnaudet v. Henry*, 303 Fed.Appx. 375, 376 (9th Cir. 2008) (finding that, because defendant "took the van to the body shop herself and knew its condition," she was "aware of the essential facts enabling her to take advantage of the exculpatory evidence") (internal quotations and alterations omitted); This also applies where the alleged *Brady* evidence is a witness statement. If the defense is "on notice of the essential facts which would enable [it] to call the witness and thus take advantage of any exculpatory testimony that [the witness] might furnish," Brady does not require the government "to make a [witness'] statement known" to the defense. *United States v. Bond*, 552 F.3d 1092, 1096 (9th Cir. 2009).

Here, petitioner contends *Brady* was violated when the state failed to provide him with a copy of the transcript of his jail conversations with Ms. Rectenwald. But both petitioner and his lawyer were aware of the contents of the conversations. Petitioner obviously knew the contents because he was a participant in the conversation. Defense counsel knew, because he was given a copy of the recorded conversations. The Court accordingly concludes the state courts' rulings are not contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim 12 should accordingly be dismissed.

**Claim 13**       **The trial court violated petitioner's 5th, 6th, and 14th Amendment rights when it allowed prejudicial expert testimony by a witness that was not qualified as an expert**

Petitioner contends the trial court abused its discretion by allowing Lori Fern Partridge to provide improper prejudicial expert testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments. Dkt. 16, Exhibit 3 at 4-6. Petitioner argues there is no evidence he was intoxicated at the time of the collision and that Ms. Partridge was allowed to impermissibly testify on that issue as an expert. *Id* at 5. Ms. Partridge is a co-worker of Mr. Kalaluhi. She was driving behind him and testified petitioner drove through a red light and struck Mr. Kalaluhi's vehicle. Dkt. 27, Exhibit 34, pages 54-60. She testified she worked for the airlines and received training in assessing when a passenger has consumed too much to drink. She stated she denies "someone boarding at least once a month" due to alcohol consumption. *Id.* at 50. She testified she told another co-worker at the scene of the collision that Mr. Kalaluhi was hit by a "drunk driver." *Id* at 69. Defense counsel objected to this statement; the trial judge sustained the objection and stated "the jury is to disregard that answer. *Id.* at 70. Ms. Partridge also testified that petitioner's speech was "slurred" and that she observed he was "a little bit wobbly." *Id.* at 73-74.

Ms. Partridge was asked if she had an opinion about whether petitioner had been drinking based on her observation that he was wobbly and had slurred speech. In response Ms. Partridge testified "he was drinking." *Id.* at 79.

Petitioner's claim that Ms. Partridge gave impermissible expert testimony fails. First, under Washington law, a lay witness may express an opinion on another person's intoxication when the witness had the opportunity to observe the affected person. *See City of Seattle v. Heatley,* 70 Wash. App 573, 580 (1993); *State v. Forsyth*, 131 Wash. 611, 612, (1924) (in prosecution for driving while intoxicated, "[i]t was not a question upon which only an expert could express an opinion."). Hence assuming Ms. Partridge is a lay witness, the trial judge did

1   not err in permitting her to testify that she thought petitioner had been drinking based on her

2   observations of him.

3          Second, petitioner must show the trial judge evidentiary ruling is more than a state law

4   error. This is because state law violations are not cognizable federal habeas claims. *Estelle v.*

5   *McGuire*, 502 U.S. 62, 67, (1991) ("federal habeas corpus relief does not lie for errors of state

6   law.")(citation omitted). Rather, what petitioner must show is that the evidentiary ruling denied

7   him a fundamentally fair trial. *Id.* at 67-68.  Petitioner bears "a heavy burden in showing a due

8   process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th

9   Cir.), amended on other grounds by 421 F.3d 1154 (9th Cir. 2005). The admission of evidence

10  violates due process only if there is no permissible inference the trier of fact can draw from it.

11  *Id.*; *Houston v. Roe*, 177 F.3d 901, 910 n. 6 (9th Cir. 1999), cert. denied, 528 U.S. 1159, (2000).

12         Petitioner has failed to meet his burden. The jury rejected Ms. Partridge's testimony that

13  petitioner was drunk as the jury found the state failed to establish vehicular assault under the

14  driving while under the influence prong. There is thus no basis to conclude petitioner was denied

15  a fair trial because Ms. Partridge testified she thought he had been drinking at the time of the

16  collision. In order to grant habeas relief, the court must find a constitutional error "had

17  substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

18  *Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776

19  (1946)). Given the jury's verdict rejecting vehicular assault under the driving under the influence

20  prong, Ms. Partridge's testimony about petitioner's drinking did not have a "substantial and

21  injurious effect or influence" on the verdict. The claim should accordingly be denied.

22  **Claim 14        The trial court violated petitioner's 5th, 6th, and 14th Amendment rights**
                     **when it refused to order a new CrR 3.5 hearing.**

23

REPORT AND RECOMMENDATION- 53

Petitioner contends the trial court erred when it failed to grant his request for a second CrR 3.5 hearing. The Washington Supreme Court describes CrR 3.5 as "Washington's confession procedure rule. Its basic purpose is to provide a uniform procedure for the admission of voluntary confessions (as well as other [incriminating] custodial statements, *see State v. Jones*, 65 Wash.2d 449, 455, 397 P.2d 815 (1964)) in a fashion that will prevent the jury from hearing an involuntary confession." *State v. Williams*, 137 Wash. 2d. 746, 750 (1999).

The trial court conducted a CrR 3.5 hearing at a time when petitioner exercised his right to represent himself. After the hearing was conducted, petitioner moved the trial court to conduct a second CrR 3.5. Dkt. 16, Exhibit 3 at 7. Petitioner contends because he represented himself at the hearing, he made mistakes during the first CrR 3.5 hearing. He contends the trial court should have granted his request for a second hearing so Officer Andy Conner could be questioned "in regard to if and when Mr. Rook was actually arrested, or if he was arrested at all." *Id.* Petitioner also contends that he should have been given a second CrR 3.5 hearing to challenge the "confession that <u>only</u> officer Andy Conner heard." *Id*. at 8.

The state court of appeals rejected the claim finding:

> Rook next argues that the trial court erred in refusing to conduct a second CrR 3.5 hearing on the admissibility of statements made to officers. At the time of Rook's CrR 3.5 hearing, Rook was pro se, with standby counsel appointed. Rook questioned the officers himself, but the court permitted standby counsel to question Rook. At the end of the hearing, Rook admitted he was "in over his head," waived his right to self-representation and sought re-appointment of counsel. But the trial court denied Rook's request to conduct the CrR 3.5 hearing again. Rook fails to demonstrate that the trial court abused its discretion in denying his request. The trial court asked Rook's attorney what different questions he would have asked or testimony he would have sought to elicit. Rook's attorney was unable to identify anything specific that he would have done differently. Nor does Rook establish any prejudice from the trial court's ruling. Rook's custodial statements all pertained to his level of intoxication and refusal to submit to a blood test, and

REPORT AND RECOMMENDATION- 54

the jury acquitted Rook of the DUI alternative means of vehicular assault.

Dkt. 27, Exhibit 26 at 7. To the extent petitioner argues the trial judge violated state law in failing to grant a second CrR 3.5 hearing, the argument fails. As discussed above, state law violations are not cognizable federal habeas claims. To the extent petitioner argues the failure to grant a second CrR 3.5 hearing denied him a fair trial the argument also fails. As the state court of appeals found, the trial court's CrR 3.5 hearing rulings did not prejudice petitioner because his custodial statements—which were the subject of the CrR 3.5 hearing—pertained to intoxication and the jury acquitted petitioner of the DUI means of vehicular assault. The state court finding is not contrary to United States Supreme Court law which requires petitioner to show the CrR 3.5 ruling had a substantial and injurious effect or influence in determining the jury's verdict. Claim 14 should accordingly be dismissed.

**Claim 15**       **The trial court violated petitioner's 14th Amendment rights when it allowed court reporter Michael P. Townsend to file verbatim report of proceedings that were not certified.**

**Claim 18**       **Appellate counsel was ineffective when she failed to obtain a certified copy of the verbatim report of proceedings in violation of the 5th, 6th, and 14th Amendments.**

In claims 15, and 18, petitioner contends his conviction and sentence should be reversed because the court reporter did not file a certified verbatim report of proceedings; his appellate counsel failed to object to this; and the verbatim report of proceedings has been altered or has missing pages. Dkt. 16, Exhibit 3 at 9-13. Petitioner presents little evidence to support this claim. In general conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Petitioner argues the transcript of proceedings is missing defense counsel's statement: "Your Honor let the record reflect the witness has identified defense counsel." *Id.* at 12.

REPORT AND RECOMMENDATION- 55

1   Petitioner presents no evidence in support of this argument, which implies the jury, state court of

2   appeals and Washington Supreme Court were unaware that the witness (Ms. Partridge) originally

3   identified defense counsel as the driver of the car that struck Mr. Kalaluhi. This implication is

4   unsupported. The transcript shows Ms. Partridge initially identified defense counsel as the driver

5   and later during direct examination stated it was petitioner, not defense counsel who was the

6   driver of the car. Dkt. 27, Exhibit 34 at 63. The transcript shows that on cross-examination,

7   defense counsel raised the misidentification stating "Ms. Partridge, um, the prosecutor was

8   asking you to identify the defendant in court, and you testified - - you identified me as the person

9   that you recall being there that night, is that correct?"

10       Petitioner also claims the transcript of proceedings was altered to exclude the portion of

11   defense counsel's closing argument in which counsel purportedly stated "You should find my

12   client guilty of the Reckless Manner Prong of Vehicular Assault, Oh, opps – he, he that's not

13   what I meant to say, what I meant to say look at the disregard for the safety of others, that's if

14   anything Mr. Rook is guilty of." Dkt. 16 exhibit 69, page 98. This claim is not supported by any

15   evidence other than petitioner's "affidavit."  As a self-serving note, the affidavit is insufficient

16   evidence to support federal habeas relief. *See Turner v. Calderon*, 281 F3d 851,881 (9the Cir.

17   2002) (Tuner's self-serving statement made years after trial that he was told the case was not a

18   death penalty case is insufficient to show Turner was unaware of a potential death verdict).

19       As petitioner has failed to present evidence that establishes the transcript of proceedings

20   was altered and that as a result of the alteration he was denied fair review of his case in the state

21   court of appeals and Washington Supreme Court, the claim should be dismissed. Additionally,

22   because petitioner fails to show how he was prejudiced, the claim that appellate counsel was

23

1  ineffective for failing to raise challenges to the accuracy or completeness of the record of

2  proceedings, and failed to get a certified copy of the transcript should be dismissed.

3  **Claim 16**          **The state policy agency denied petitioner his 4th, 5th, 8th, and 14th**
                        **Amendment rights when it failed to conduct a proper investigation of the**
4                       **crimes petitioner was charged with.**

5          In this claim, petitioner argues there is no evidence that he was the driver of the car that

6  struck Mr. Kalaluhi's car. He argues the trial court therefore violated the "Corpus Delicti" rule in

7  admitting his statements. Dkt. 16, Exhibit 3 at 14-18. The Washington Supreme Court rejecting

8  the argument finding:

9               Mr. Rook reframes his insufficiency argument as a corpus delicti
                question as to whether the State proved that he was the driver of
10              the car that crashed into the victim's care and not his alleged
                passenger, Tracy Rectenwald. Under the corpus delicti rule, there
11              must be independent evidence of the charged crime before the
                defendant's confession may be considered. *State v. Aten*, 130
12              Wn.2d 640, 640, 927 P.2d 210 (1996). But the corpus delicti rule
                does not apply in this instance because Mr. Rook testified at trial
13              and admitted under oath that he drove the car. His theory of
                defense was that he had not been drinking alcohol before the crash
14              and that he lost control of the car after Ms. Rectenwald poured her
                alcoholic drink in his lap and hit him of the head and face,
15              knocking off his glasses. Even if Mr. Rook may raise a corpus
                delicti argument for the first time in a personal restraint petition
16              (Which I need not decide), there was independent evidence that
                Mr. Rook drove the care. An eyewitness saw him enmerge from
17              the driver's door of this car immediately after the crash, and the
                police officer responding to the scene reported that Ms.
18              Rectenwald was a passenger in Mr. Rook's car and that Mr. Rook
                was by the driver's side. Mr. Rook does not plausibly argue that he
19              was not the driver.

20  Dkt. 27, Exhibit, 28, page 3. To the extent petitioner is arguing that his conviction violates

21  Washington state law, his argument fails because state law violations are not cognizable grounds

22  for federal habeas relief. To the extent petitioner is arguing his conviction should be overturned

23  due to insufficient evidence, it also fails. A petitioner challenging a conviction for insufficient

REPORT AND RECOMMENDATION- 57

1  evidence is entitled to habeas relief only if, when viewing the record in a light most favorable to

2  the prosecution, "no rational trier of fact could have found proof beyond a reasonable doubt."

3  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Here, the state court found petitioner testified he

4  was driving the car that struck the victim and that two witnesses also testified petitioner was the

5  driver. The Court thus concludes the state courts' rulings are not contrary to, or involved an

6  unreasonable application of, clearly established Supreme Court law, or based on an unreasonable

7  determination of the facts in light of the evidence presented in the state court proceeding. Claim

8  16 should accordingly be dismissed.

9  Claim 19    **The cumulative errors in petitioner's case resulted in the
            violation of petitioner's 4th, 5th, 6th, 8th, and 14th
10           Amendment rights.**

11          Petitioner contends the cumulative errors alleged above violated his constitutional rights.

12  The court may grant habeas relief for cumulative error only where the errors have "so infected

13  the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v.*

14  *DeChristoforo*, 416 U.S. 637, 643 (1974). Such "infection" occurs where the combined effect of

15  the errors had a "substantial and injurious effect or influence on the jury's verdict." *Brecht*, 507

16  U.S. at 637 1710 (internal quotations omitted). If the evidence of guilt is otherwise

17  overwhelming, the cumulative errors are considered "harmless" and habeas relief is not

18  warranted. *Parle v. Reynolds*, 505 F.3d 922, 928 (9th Cir. 2007) citing *United States v.*

19  *Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

20          Here, the state court of appeals rejected petitioner's cumulative error claim finding "Rook

21  fails to identify any error as to the claims addressed." Dkt. 27, Exhibit 26, page 18. The Court

22  agrees that the state courts' determination do not run afoul of Supreme Court law and do not rest

23  upon unreasonable factual determinations. The Court thus finds none of the claims presented in

REPORT AND RECOMMENDATION- 58

this habeas petition, and thus a claim of cumulative error, mandate relief. Moreover, the record indicates the evidence against petitioner was overwhelming. The evidence established petitioner drove at a high rate of speed through a red light and broadsided Mr. Kalaluhi's car. Petitioner himself testified that he was driving the car. The medical evidence established Mr. Kalaluhi suffered serious injuries some of which were life threatening as a result of the collision. Given the strength of the evidence against petitioner the cumulative error claim fails and the Court

**G.      Certificate of Appealability**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends petitioner not be issued a COA. No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

The Court recommends **DENYING** petitioner's habeas petition on the merits without an evidentiary hearing and **DENYING** the issuance of a certificate of appealability.

REPORT AND RECOMMENDATION- 59

1      Any objections to this Recommendation must be filed and served upon all parties no later

2   than Wednesday**, October 30, 2019.**  The Clerk should note the matter for Friday**, November 1,**

3   **2019,** as ready for the District Judge's consideration if no objection is filed.  If objections are

4   filed, any response is due within 14 days after being served with the objections.  A party filing an

5   objection must note the matter for the Court's consideration 14 days from the date the objection

6   is filed and served.  The matter will then be ready for the Court's consideration on the date the

7   response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to

8   timely object may affect the right to appeal.

9      DATED this 16th day of October, 2019.

10

11      _____

12      BRIAN A. TSUCHIDA
        United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION- 60