THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUY ADAM ROOK,<br><br>               Petitioner,<br><br>   v.<br><br>DONALD HOLBROOK,<br><br>              Respondent. | CASE NO. C18-0233-JCC<br><br>ORDER |

This matter comes before the Court on Petitioner's objections (Dkt. No. 52) to the report and recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge (Dkt. No. 47). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby OVERRULES Petitioner's objections, ADOPTS the report and recommendation, and DENIES Petitioner's petition for a writ of habeas corpus for the reasons explained herein.

**I.    BACKGROUND**

Judge Tsuchida's report and recommendation set forth the underlying facts of this case and the Court will not repeat them here. (*See id*. at 4–7.) The report and recommendation rejected Petitioner's argument that his life-without-parole ("LWOP") sentence for a third-strike driving offense with a *mens rea* of recklessness is grossly disproportionate in violation of the Eighth Amendment of the United States Constitution. (*Id*. at 14–32.) Petitioner's counsel has

filed objections to the report and recommendation, asking that the Court find that 28 U.S.C. § 2254(d) does not apply to his Eighth Amendment claim and grant him habeas relief. (Dkt. No. 52 at 1.) The Court addresses each of Petitioner's objections to the report and recommendation in turn.

## II. DISCUSSION

### A. Legal Standard

A district court reviews *de novo* those portions of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Objections are required to enable the district court to "focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). General objections, or summaries of arguments previously presented, have the same effect as no objection at all, since the court's attention is not focused on any specific issues for review. *See United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007).

### B. Adjudication of Eighth Amendment Claim on the Merits

Petitioner asserts that the Washington State Court of Appeals did not adjudicate his federal Eighth Amendment claim on the merits and therefore its decision is not entitled to deference under 28 U.S.C. § 2254(d). (Dkt. No. 52 at 2–9.)

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). "A judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments.'" *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). But when "a line of state precedent is viewed as fully incorporating a related federal constitutional right . . . a state appellate court may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right." *Id.* at 298–99 (collecting exemplary cases).

A brief examination of Washington's repeat offender statute, the federal and Washington constitutional provisions at issue, and relevant Washington caselaw is warranted. Under Washington's Persistent Offender Accountability Act ("POAA"), a "persistent offender" must receive an LWOP sentence. Wash. Rev. Code § 9.94A.570. The POAA defines "persistent offender" as a person who, having been convicted of two "most serious offenses" or their out-of-state equivalents on two prior occasions, commits a third "most serious offense." Wash. Rev. Code § 9.94A.030(38). "Most serious offense" is in turn defined as any class A felony or enumerated class B felonies that are violent, sexual, or dangerous. Wash. Rev. Code § 9.94A.030(33).[1]

The Eighth Amendment of the United States Constitution bars "cruel and unusual punishments." U.S. Const. amend. VIII. Article I, section 14 of the Washington State Constitution bars "cruel punishment." Wash. Const. art. I, § 14. In analyzing challenges to LWOP sentences imposed pursuant to the POAA, Washington courts have consistently "held that [article I, section 14 of the Washington State Constitution] is more protective than the Eighth Amendment." *State v. Witherspoon*, 329 P.3d 888, 894 (Wash. 2014) (citing *State v. Rivers*, 921 P.2d 495, 502 (Wash. 1996)); *see State v. Moretti*, 446 P.3d 609, 613–14 (Wash. 2019) (reviewing Washington caselaw and stating that "if it is not cruel under article I, section 14 . . . then it is necessarily not cruel and unusual under the Eight Amendment"); *State v. Bassett*, 428 P.3d 343, 347–49 (Wash. 2018) (conducting *Gunwall* analysis and concluding that article I, section 14 is more protective than the Eight Amendment in the context of juvenile sentencing); *State v. Ramos*, 387 P.3d 650, 667 (Wash. 2017), *cert. denied*, 138 S. Ct. 467 (2017). Washington courts have accordingly declined to analyze Eighth Amendment claims brought in

---

[1] At trial, Petitioner was found guilty of vehicular assault under the reckless manner alternative means, a qualifying offense under the POAA. *See State v. Rook*, 2013 WL 3227563, slip op. at 3 (Wash. Ct. App. 2013); Wash. Rev. Code § 9.94A.030(33)(p). Petitioner's two prior qualifying convictions were for first degree robbery and first degree rape of a child, both of which were committed when he was an adult. (*See* Dkt. No. 57 at 7, 19.)

parallel with article I, section 14 claims against an LWOP sentence imposed pursuant to the POAA. *See, e.g.*, *Moretti*, 446 P.3d at 613 ("Because we have previously held that article I, section 14 offers more protection than the federal constitution in the context of sentencing both recidivists and juveniles, we do not address the petitioners' argument that [an LWOP sentence imposed pursuant to the POAA] is cruel and unusual under the Eighth Amendment.").

In ruling on Petitioner's constitutional claims, the state court concluded that "[t]he state constitutional prescription against 'cruel punishment' affords greater protection than its federal counterpart. Thus, if the state constitutional provision was not violated, neither is the federal provision." *State v. Rook*, 2013 WL 3227563, slip op. at 6 (Wash. Ct. App. 2013) (footnotes omitted) (citing *State v. Fain*, 617 P.2d 720, 723 (Wash. 1980); *State v. Morin*, 995 P.2d 113, 115–16 (Wash. Ct. App. 2000)). Petitioner takes issue with the state court's analysis on a number of grounds, which the Court addresses in turn.

First, Petitioner argues that the state court could not have adjudicated the merits of his Eighth Amendment claim because it did not cite federal caselaw or compare the federal and state constitutional provisions and instead decided the issue "as a matter of binding state court precedent." (Dkt. No. 52 at 3–4.) But, as discussed above, Washington courts faced with paired Eighth Amendment and article I, section 14 challenges to LWOP sentences imposed pursuant to the POAA have consistently declined to analyze the Eighth Amendment claims. *See, e.g.*, *Moretti*, 446 P.3d at 613–14. And in doing so, they generally do not extensively analyze the differences in the constitutional provisions themselves or cite federal caselaw examining this issue. *See id.*; *see also State v. Roberts*, 14 P.3d 713, 733 & n.11 (Wash. 2000) ("As we apply established principles of state constitutional jurisprudence [regarding the protectiveness of article I, section 14 and the Eighth Amendment] here, a *Gunwall* analysis is not required"); *but see Bassett*, 428 P.3d 343, 347–49 (Wash. 2018) (conducting *Gunwall* analysis and concluding that article I, section 14 is more protective than the Eight Amendment in the context of juvenile sentencing). Therefore, while Petitioner takes issue with the perfunctory nature of the state

court's analysis, he has not established that the state court did not adjudicate the merits of his Eighth Amendment claim on this ground.[2]

Petitioner next argues that the state court did not adjudicate the merits of his Eighth Amendment claim because article I, section 14 is not inherently more protective than the Eighth Amendment and because Washington courts have not been incorporating developments in Eighth Amendment jurisprudence such that a ruling on an article I, section 14 claim necessarily resolves an Eighth Amendment challenge. (Dkt. No. 52 at 5–7.) Neither argument has merit. When faced with an adult offender's paired Eighth Amendment and article I, section 14 challenges to an LWOP sentence imposed pursuant to the POAA (as in Petitioner's case), Washington courts have compared the language of the two constitutional provisions and have consistently concluded that article I, section 14 grants more protection. *See, e.g.*, *Witherspoon*, 329 P.3d at 894 (citing *Rivers*, 921 P.2d at 502) ("The Eighth Amendment bars cruel and unusual punishment while article I, section 14 bars cruel punishment. This court has held that the constitutional provision is more protective than the Eighth Amendment in this context.").

Petitioner cites Justice Sheryl Gordon McCloud's dissenting opinion in *State v. Witherspoon*, 329 P.3d 888, 901 n.6 (Wash. 2014), for the proposition that Washington courts have refused "as a matter of precedent, to consider LWOP sentences to be any more severe than life-with-parole sentences" in spite of the Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010). (Dkt. No. 52 at 6–7) (citing *Rivers*, 921 P.2d at 503; *Witherspoon*, 329 P.3d at 895)). But the *Witherspoon* majority analyzed both *Graham* and the Supreme Court's subsequent decision in *Miller v. Alabama*, 123 S. Ct. 2455 (2012), and rejected the petitioner's contention

---

[2] Petitioner further challenges the state court's cited authority as either old or similarly lacking in necessary analysis. (Dkt. No. 52 at 4) (citing *Fain*, 617 P.2d at 723; *Morin*, 995 P.2d at 116). His challenge is unavailing. Neither decision has been overruled, and in fact both have been cited as authority in recent Washington decisions. *See, e.g.*, *Moretti*, 446 P.3d at 613 ("We also hold that the sentences in these cases are not grossly disproportionate to the offenses under the four *Fain* factors"); *State v. Moen*, 422 P.3d 930, 936 (Wash. Ct. App. 2018) (quoting *Morin*, 995 P.2d at 116)).

that those decisions dictated that LWOP sentences imposed on adult offenders pursuant to the POAA violated the Eighth Amendment. *See Witherspoon*, 329 P.3d at 895–96; *see also Miller v. Alabama*, 123 S. Ct. 2455, 2458 (2012) (noting that *Graham* "concluded that the [Eighth] Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a nonhomicide offense"). Thus, contrary to Petitioner's assertion, Washington courts have been sensitive to developments in Eighth Amendment jurisprudence but have still held that an adjudication of an adult offender's article I, section 14 claim against an LWOP sentence imposed pursuant to the POAA necessarily adjudicates the offender's Eighth Amendment challenge as well. Petitioner's disagreement with the conclusions of the Washington courts is insufficient to demonstrate that the state court in this case did not adjudicate the merits of his Eighth Amendment claim when it denied his article I, section 14 claim.[3]

In sum, pursuant to substantial Washington state law precedent, the state court necessarily analyzed Petitioner's Eighth Amendment claim when it addressed his claim under the more protective Washington constitutional provision. *See Moretti*, 446 P.3d at 613; *Witherspoon*, 329 P.3d at 894; *Rook*, 2013 WL 3227563, slip op. at 6–8. Therefore, while the state court did separately analyze Petitioner's Eighth Amendment claim, it nonetheless considered the relevant evidence and the parties' arguments regarding Petitioner's federal and state constitutional claims and duly rendered a decision. *See Johnson*, 568 U.S. at 302. Therefore, Petitioner has not established that the state court did not adjudicate the merits of his Eighth Amendment claim.

---

[3] Petitioner also cites the Supreme Court's analytical framework for determining whether a silent state court opinion adjudicated the merits of a federal claim but acknowledges that the state court in this case was not silent as to his Eighth Amendment claim. (*See* Dkt. No. 52 at 7–8) (citing *Johnson*, 568 U.S. at 301–02). Petitioner further argues that the Washington State Supreme Court has acknowledged that its jurisprudence regarding the interaction between article I, section 14 and the Eighth Amendment has been inconsistent. (*See id.* at 8) (citing *Bassett*, 428 P.3d at 348). But this is not true as to cases involving an adult offender's paired Eighth Amendment and article I, section 14 challenges to an LWOP sentence imposed pursuant to the POAA. As recently as August 2019, the Washington State Supreme Court unequivocally reiterated that article I, section 14 is more protective in this context. *See Moretti*, 446 P.3d at 609 (citing *Witherspoon*, 329 P.3d at 894; *Bassett*, 428 P.3d at 350).

1 | Petitioner's objections are OVERRULED on this ground.

### C. Contrary to or an Unreasonable Application of Supreme Court Precedent

Petitioner contends that even if the state court adjudicated his Eighth Amendment claim on the merits, its adjudication was contrary to or an unreasonable application of the Supreme Court's Eighth Amendment jurisprudence. (Dkt. No. 52 at 9–11.) Petitioner first asserts that the state court did not "acknowledge the unique severity" of an LWOP sentence and erroneously compared his LWOP sentence with "sentences in other states that permitted discretionary life-with-parole sentences," contrary to the Supreme Court's decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Graham*, 560 U.S. at 48. (*See* Dkt. No. 52 at 10–11.)

A federal court may grant a state prisoner's habeas petition on a claim that was adjudicated on the merits if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "clearly established" phrase "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the "contrary to" clause, a federal court may grant the prisoner's habeas petition only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See id.* at 405–06 (2000).

In *Solem*, the petitioner was convicted of passing a "no account" check for $100 and, having been previously convicted of six nonviolent felonies, received an LWOP under South Dakota's habitual offender statute. 463 U.S. at 279–82. In analyzing the petitioner's Eighth Amendment challenge to his sentence, the Supreme Court looked to the gravity of his offense and the harshness of his sentence, the sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for the same crime in other jurisdictions. *See id.* at 290–

301. In evaluating these factors, the Supreme Court emphasized the nonviolent nature of the petitioner's offenses and the severity of an LWOP sentence as compared to a sentence of life with the possibility of parole. *Id*. at 296–99. And while the Supreme Court acknowledged that the petitioner could have received the same sentence for the same conduct in Nevada, it was unaware of any similarly-situated offender receiving an LWOP sentence and thus found that "[i]t appear[ed] that [the petitioner] was treated more severely than he would have been in any other State." *Id*. at 300–01. The Supreme Court accordingly concluded that the petitioner's sentence was "significantly disproportionate to his crime" and therefore violated the Eighth Amendment. *Id*. at 303.

In *Harmelin*, the Supreme Court clarified that the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." 501 U.S. at 1001 (Kennedy, J., concurring) (collecting cases); *see Graham*, 560 U.S. at 60. In upholding the petitioner's mandatory LWOP sentence, imposed pursuant to Michigan law for possessing more than 650 grams of cocaine, the Supreme Court primarily looked to the serious nature of his underlying criminal conduct. *See Harmelin*, 501 U.S. at 961, 1002–04 (discussing *Solem*, 463 at 296–99; *Rummel v. Estelle*, 445 U.S. 263, 296 (1980)). The Supreme Court rejected the petitioner's argument that a comparative analysis was required under *Solem*, stating that a such an analysis was properly used "to validate an initial judgment that a sentence is grossly disproportionate to the crime" and that because the petitioner's LWOP sentence did not "give rise to an inference of gross disproportionality," no comparative analysis was necessary in his case. *Id*. at 1005 (citing *Solem*, 463 U.S. at 290–92, 298–300, & nn.16, 17; *Rummel*, 445 U.S. at 281; *Weems v. United States*, 217 U.S. 349, 377–81 (1910)). The Supreme Court also rejected the petitioner's argument that the mandatory nature of his LWOP sentence merited additional scrutiny under the Eighth Amendment, stating that the legislature was not required to grant courts discretion in sentencing and distinguishing the *Solem* sentencing judge's exercise of discretion to impose an LWOP sentence. *Id*. at 1006 (citing *Chapman v. United States*, 500 U.S. 453, 467 (1991); *Solem*, 463

U.S. at 299 n.6)).

In this case, the state court addressed the serious nature of Petitioner's LWOP sentence when analyzing whether his sentence was disproportionate to his underlying criminal conduct in violation of article I, section 14. *See Rook*, 2013 WL 3227563, slip op. at 6 (recognizing Petitioner's argument that his offense "did not warrant the imposition of the highest punishment short of the death penalty"). The state court proceeded to thoroughly analyze the relevant provisions of the POAA and the serious nature of Petitioner's underlying criminal conduct, concluding that he "faile[d] to show that either the nature of the [offense] or the legislative purpose *warrants a less severe penalty* and is therefore disproportionate in violation of the constitutional prohibition against cruel punishment." *Id.* at 7 (emphasis added). The state court's approach mirrors that of the Supreme Court in *Harmelin*, where the Supreme Court acknowledged the gravity of the petitioner's LWOP sentence but primarily analyzed the serious nature of his underlying criminal conduct and the Michigan legislature's authority to construct its sentencing scheme. *Compare id.* at 6–7, *with Harmelin*, 501 U.S. at 1001–08. Thus, Petitioner has not demonstrated that the state court's decision was contrary to a decision of the Supreme Court on this issue. *See Williams*, 529 U.S. at 405–06.[4]

The state court also conducted a comparative analysis pursuant to Washington law, identified multiple other states under whose laws Petitioner would have received a similar sentence for his underlying criminal conduct, and concluded that he "therefore fail[ed] to show that there are no other states in which he would be subjected to a similar penalty for this conduct." *Rook*, 2013 WL 3227563, slip op. at 8. As a threshold matter, Petitioner has not demonstrated that the state court's comparative analysis was required under Supreme Court

---

[4] To the extent that Petitioner argues that the state court failed to give due consideration to the nature of Petitioner's LWOP sentence following the Supreme Court's decision in *Graham*, that argument fails for the reasons stated above. *See supra* Section II.B.; *Miller*, 123 S. Ct. at 2458 (noting that *Graham* "concluded that the [Eighth] Amendment prohibits a sentence of life without the possibility of parole for a *juvenile* convicted of a nonhomicide offense") (emphasis added).

ORDER
C18-0233-JCC
PAGE - 9

precedent. Under *Harmelin*, a comparative analysis is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" and thus should be used "to validate an initial judgment that a sentence is grossly disproportionate to a crime." 501 U.S. at 1005. In this case, the state court did not find that Petitioner's LWOP sentence raised an inference of disproportionality under either the Eighth Amendment or the more protective article I, section 14, and thus no comparative analysis was called for under Supreme Court precedent. *See id.*; *Rook*, 2013 WL 3227563, slip op. at 7. And while Petitioner takes issue with the state court's requirement that he show that there are "*no* other states in which he would be subjected to a similar penalty" for his underlying criminal conduct, (Dkt. No. 52 at 10–11) (citing *Rook*, 2013 WL 3227463, slip op. at 8; *Solem*, 463 U.S. at 297), he does not establish that this was contrary to Supreme Court precedent. In *Solem*, the Supreme Court noted that "courts *may* find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 291 (emphasis added); *see Harmelin*, 501 U.S. at 1005. The Supreme Court found that while the petitioner could have theoretically received the same sentence for the same conduct in Nevada, the lack of a comparative case made "[i]t [appear] that [the petitioner] was treated more severely than he would have been in any other State." *Solem*, 463 U.S. at 299–300. Petitioner has not established that the fact-specific inquiry undertaken by the Supreme Court in *Solem* is part of the holding of that case or that the state court's analysis of other states' laws under which Petitioner could have received a similar sentence for comparable or lesser conduct was contrary to any such holding. *See Rook*, 2013 WL 3227463, slip op. at 8; (Dkt. No. 52 at 11). Thus, to the extent *Solem* applies to Petitioner's case, he has not demonstrated that the state court's decision was contrary to the Supreme Court's decision in *Solem*. *See Williams*, 529 U.S. at 405–06.

Petitioner next contends that the state court unreasonably applied various Supreme Court decisions. (*See* Dkt. No. 52 at 11) (citing *Solem*, 463 U.S. at 293, *Harmelin*, 501 U.S. at 1001; *Graham*, 560 U.S. at 48; *Edmund v. Florida*, 458 U.S. 782, 801 (1983)). Under the

"unreasonable application" clause of 28 U.S.C. § 2254(d)(1), a federal court may grant a state prisoner's habeas petition if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 407–09; *see, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 106–10 (2011) (discussing whether California Supreme Court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), was unreasonable under 28 U.S.C. § 2254(d)(1)); *White v. Woodall*, 572 U.S. 415, 420–21 (2014) (discussing whether Kentucky's Supreme Court and Court of Appeals' application of the Supreme Court's decisions in *Carter v. Kentucky*, 450 U.S. 288 (1981), *Estelle v. Smith*, 451 U.S. 454 (1981), and *Mitchell v. United States*, 526 U.S. 314 (1999), was unreasonable under 28 U.S.C. § 2254(d)(1)). Petitioner has not pointed to any part of the state court's decision that identified the correct governing legal principles from the Supreme Court decisions he cites before unreasonably applying those principles. (*See* Dkt. No. 52 at 11.) In fact, as Petitioner points out earlier in his objections, the state court did not cite any of the federal cases relied on by Petitioner. (*See id*. at 3) ("The state court of appeals declined to separately analyze the Eighth Amendment argument. It also failed to cite a single federal case."). Therefore, Petitioner has not established that the state court unreasonably applied the Supreme Court precedent he cites to the facts of his case. *See Williams*, 529 U.S. at 407–09.

In sum, Petitioner has not established that the state court's decision was contrary to or an unreasonable application of the Supreme Court's Eighth Amendment jurisprudence, and his objections are OVERRULED on this ground.[5]

---

[5] Petitioner also argues that even if his Eighth Amendment claim was adjudicated on the merits, the report and recommendation erred when it found that his 50-state survey of habitual offender statutes and accompanying declarations were barred under *Cullen v. Pinholster*, 563 U.S. 170 (2011). (Dkt. No. 52 at 11–13; *see* Dkt. Nos. 41-1–41-3.) Petitioner filed those documents primarily in support of his argument that on *de novo* review the Court should find that his LWOP sentence was grossly disproportionate to his underlying criminal conduct in violation of the Eighth Amendment. (*See* Dkt. No. 41 at 12 – 24) (citing Dkt. Nos. 41-1–41-3). As the Court concludes that the state court adjudicated the merits of Petitioner's Eighth Amendment claim and that the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent, Petitioner is not entitled to *de novo* review of his Eighth Amendment

### D. Certificate of Appealability

A petitioner seeking a certificate of appealability must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To satisfy this standard, the petitioner must demonstrate either that reasonable jurists could disagree with the district court's treatment of the constitutional claims or "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Judge Tsuchida concluded that Petitioner is not entitled to a certificate of appealability with respect to any of his claims. (Dkt. No. 47 at 59.) In his objections, Petitioner argues that a certificate of appealability is warranted because he has made a substantial showing of the denial of his constitutional rights, that jurists of reason could disagree with the rejection of his Eighth Amendment claim, and that "jurists could conclude the issues presented'—particularly the issue of first impression regarding the application of § 2254(d) to the court of appeals opinion under review—'are adequate to deserve encouragement to proceed further.'" (Dkt. No. 52 at 14) (citing 28 U.S.C. § 2253(c)(3)) (quoting *Miller-El*, 537 U.S. at 327). Based on its review of the report and recommendation and analysis of Petitioner's objections thereto, the Court disagrees with Petitioner's contentions and DENIES Petitioner's request for the issuance of a certificate of appealability.

### E. Order Denying Permission to File Supplemental *Pro Se* Reply Brief

On October 16, 2019, Judge Tsuchida denied Petitioner's motion to consider his *pro se* pleadings, finding that "Petitioner does not have a right to co-litigate a federal habeas petition pro se while represented by counsel." (Dkt. No. 46 at 2) (citing W.D. Wash. Local Civ. R. 83.2(b)(5)). Judge Tsuchida noted that "[a]s the Court may apply the Federal Rules of Civil

---

claim. *See* 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 98. Therefore, the Court need not decide the issue of whether Petitioner's survey and declarations are barred under *Pinholster*. For the same reason, the Court declines to grant Petitioner's renewed request that he be granted habeas relief premised on his Eighth Amendment clam. (*See* Dkt. No. 52 at 13) (citing Dkt. Nos. 41 at 12–23, 41-1–41-3).

Procedure to federal habeas petitions under Habeas Rule 12, the Court concludes petitioner has no right to proceed pro se while represented." (*Id.*) Judge Tsuchida further stated that Petitioner's professed "difficulty trusting counsel" was insufficient to merit allowing him to co-litigate his case. (*Id.*) Nonetheless, Judge Tsuchida's report and recommendation thoroughly addressed each of Petitioner's many asserted grounds for habeas relief. (*Id.* at 2–3; *see generally* Dkt. No. 47.)

Petitioner asks the Court to reverse Judge Tsuchida's denial of his request to file a supplemental *pro se* brief, arguing that application of the Federal Rules of Civil Procedure to habeas proceedings is discretionary and that Petitioner's distrust of counsel constitutes good cause meriting suspension of the Rules in this case. (Dkt. No. 52 at 13–14.) As a threshold matter, the Court is skeptical that Petitioner's claim is properly brought in the context of objections to a report and recommendation that does not address the issue. *See Thomas*, 474 U.S. at 147. Further, Petitioner's claim essentially asks the Court to reconsider Judge Tsuchida's prior ruling, and he has not identified a manifest error in Judge Tsuchida's ruling or provided new facts or legal authority which could not have been brought to the Court's attention earlier with reasonable diligence. *See* W.D. Wash. Local Civ. R. 7(h)(1); *Premier Harvest LLC v. AXIS Surplus Ins. Co.*, Case No. C17-0784-JCC, Dkt. No. 61 at 1 (W.D. Wash. 2017); (Dkt. Nos. 52 at 13–14, 54 at 2–3). Therefore, Petitioner's request is DENIED.

## III. CONCLUSION

For the foregoing reasons, and having reviewed the entirety of the report and recommendation and finding no error, the Court hereby ORDERS that:

1. Petitioner's objections to the report and recommendation (Dkt. No. 52) are OVERRULED;
2. The report and recommendation (Dkt. No. 47) is ADOPTED and APPROVED;
3. Petitioner's habeas petition (Dkt. No. 7) is DENIED and the petition is DISMISSED with prejudice;
4. Petitioner is DENIED issuance of a certificate of appealability; and

5. The Clerk is DIRECTED to send copies of this order to the parties.

DATED this 21st day of January 2020.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-0233-JCC
PAGE - 14